AO 91 (REV.5/85) Criminal Complaint                                          AUSA Brian Hayes, (312) 353-4307

# UNITED STATES DISTRICT COURT

____NORTHERN____   DISTRICT OF  __ILLINOIS, EASTERN DIVISION__

**UNITED STATES OF AMERICA**

**FILED**
12-17-07
DEC 17 2007

v.

MICHAEL W. DOBBINS **MAGISTRATE JUDGE SCHENKIER**
CLERK, U.S. DISTRICT COURT

**GARY M. AUMANN and
DONALD E. DOWN**

**CRIMINAL COMPLAINT**

CASE NUMBER: **07 CR 0844**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of

my knowledge and belief.  On or about  __August 20, 2007__  in  __Cook__  county, and elsewhere, in the

____Northern__  District of _____Illinois_____ defendant(s) did,

(Track Statutory Language of Offense)

having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by
means of false or fraudulent pretenses, representations, or promises, for the purpose of executing the scheme
and attempting to do so, knowingly caused to be delivered by U.S. mail from Tulsa, Oklahoma, according to
the direction thereon, an envelope addressed to Addison Business Supply, P.O. Box 1332, Addison, Illinois,
60101,

in violation of Title ____18____ United States Code, Section(s) ____1341 and 2____.

I further state that I am a(n) __FBI Special Agent__ and that this complaint is based on the following facts:
_Official Title_

Continued on the attached sheet and made a part hereof:   __x__ Yes   ____ No

_Signature of Complainant_

Sworn to before me and subscribed in my presence,

__December 17, 2007__                          at __Chicago, Illinois__
Date                                                          City and State

__SIDNEY I. SCHENKIER, U.S. Magistrate Judge__
Name & Title of Judicial Officer                      _Signature of Judicial Officer_

I, David F. Mertz, first being duly sworn, state the following under oath:

1.    I am an agent of the Federal Bureau of Investigation (FBI) and have been so employed for approximately 8 years.  I am currently assigned to Chicago Division of the FBI.  As part of my assigned duties, I investigate violations of federal criminal law, including mail and wire fraud.  Prior to my employment with the FBI, I had been employed as a State Investigator for the New Jersey Attorney General's Office, Division of Criminal Justice; a Special Agent for the New Jersey State Commission of Investigation; and an Investigator for the Hudson County Prosecutor's Office.

2.    This affidavit is based on my personal knowledge and information obtained from various documents, witnesses and other law enforcement officials. The information contained in this affidavit is submitted for the limited purposes of: (i) filing a criminal complaint charging GARY M. AUMANN and DONALD E. DOWN with committing mail fraud, in violation of Title 18, United States Code, Section 1341; (ii) establishing probable cause to search the residence of AUMANN, located at 465 Dominion Court, Wood Dale, Illinois (the "Target Residence"); and (iii) seizing certain property further described herein which represents proceeds traceable directly or indirectly to AUMANN's violations of the mail fraud statute. Given the limited purposes of this affidavit, it does not include all of the information that I have acquired while participating in this investigation.

## Overview

3.    AUMANN is a long-time employee of American Airlines (AA) responsible for ordering items needed to run AA operations at O'Hare Airport and for approving

purchases orders from vendors for payment.  AUMANN and a criminal associate

named DONALD DOWN have defrauded AA for at least five and one-half years by

causing AA to direct payments totaling more than $3,100,000 to bank accounts held

by DOWN in the name A & D Supplies (ADS) and Addison Business Supplies

(ABS), for services and/or products that were never provided to AA, thereafter

splitting the proceeds.

### SPECIFIC FACTS

I.    **Information relating to GARY AUMANN**

4.   GARY AUMANN, a sixty-five year old male, has been employed by AA for

about 39 years.  AUMANN currently holds the position of Planner of Facility

Maintenance ("PFM").  As the PFM, according to AA, AUMANN coordinates

administrative functions in the Facilities Maintenance organization, focusing on (i)

project scheduling, (ii) sourcing supplies, parts, and vendor services, (iii) reviewing

invoices and approving invoices for processing in accordance with corporate

guidelines, (iv) maintaining oversight of vendor performance for activities related to

maintenance, and (v) repair of American's terminals, hanger areas, cargo facilities

and ramp/parking areas.  AUMANN's duties also include developing the annual

facilities maintenance budget, tracking its performance on a monthly basis, and

providing senior management with reports documenting performance and variances

from the budget.

5.   According to AA, in his position as PFM, AUMANN is responsible for

ordering items needed to run AA operations at the O'Hare airport and to approve

purchase orders for vendor payment. AA has delegated authority to AUMANN to approve purchase orders of less than $10,000. According to AA policy, payments over $10,000 must be approved by AUMANN's supervisor unless the products and services are supported by contract.

6. AUMANN's salary, according to AA, is currently $52,000 per year. Since 2002, AUMANN has instructed AA to direct $500 per bi-monthly pay period to his AA credit union account.[1] After the remaining typical deductions (e.g., social security, income taxes, health insurance) the bulk of the remainder of his paycheck has been direct-deposited into AUMANN's 401(k) account (approximately $500 per month), leaving him with a net paycheck of $50 - $75 per pay period.

7. Despite directing the vast majority of his bi-monthly pay to savings and investments, the FBI's investigation has thus far shown that between 2002 and 2005, AUMANN has become the owner of numerous vehicles and boats, as well as river front property in Missouri, all while also maintaining a home and a condominium in the Chicago area. I believe this indicates that AUMANN has a significant source of funds in addition to his known legitimate income.

8. Between approximately January 2002 and September 2007, AUMANN approved for payment on behalf of AA purchase orders allegedly submitted by ABS

---

[1]According to a mortgage application submitted by AUMANN to National City Mortgage on approximately June 17, 2005, the account balance in this AA credit union account was approximately $160,000. Thus, based upon the size of the account balance and the other evidence discussed below regarding AUMANN's finances, it appears this account has been used principally as a savings account by AUMANN, rather than an account from which he has paid recurring living expenses.

and ADS in amounts totaling more than $3,100,000. According to AA's auditing department, neither ABS or ADS has a contract with AA. When approving payments of purchase orders for ABS and ADS, however, AUMANN falsely indicated purchase orders that exceeded $10,000 were supported by a contract with AA.

9. AA has advised the FBI that on or about October 16, 2007, AUMANN's office was searched by AA employees. AA has not yet informed AUMANN that the search occurred. (The FBI did not request that AA perform this search, and no law enforcement personnel participated in the search.) AA provided the FBI with copies of some of the documents located in AUMANN's office and copied by AA personnel during the search. Included among those documents were numerous blank ABS and ADS invoices and sales slips found in AUMANN's file cabinet.

## II.    Information relating to payments from American Airlines to ABS and ADS.

10. According to information received from AA, between approximately January 6, 2002, and September 23, 2007, AUMANN approved invoices submitted by ABS for products and services totaling approximately $1,355,422. During that time period, AA issued approximately 174 checks to ABS. Checks issued to ABS were deposited into account number 17100581202 at First American Bank, held in the name ABS. According to records obtained from First American Bank, DONALD DOWN is the signatory for the ABS account, and the address of record on the account is P.O. Box 1332, Addison, Illinois, 60101.

- 4 -

11. According to information received from AA, between approximately January 6, 2002 and September 23, 2007, AUMANN approved invoices submitted by ADS for products and services totaling approximately $1,837,304. During that time period, AA issued approximately 186 checks to ADS. Checks issued to ADS were deposited into account number 10111942304 at First American Bank, held in the name ADS. According to records obtained from First American Bank, DONALD DOWN is the signatory for the ADS account, and the address of record on the account is P.O. Box 92053, Elk Grove Village, Illinois, 60009.

12. During the time period described above, no significant deposits were made to either the ABS or ADS account other than checks issued by AA. Over that same time period, funds were withdrawn from the accounts on a regular basis through issuance of checks written to AUMANN, totaling approximately $2,441,863, and to DOWN, totaling approximately $810,918.[2] In other words, during the approximately 5 ½ year period describe above, there was virtually no other banking activity in these accounts other than deposit of AA checks and splitting of the proceeds of those checks by AUMANN (~75%) and DOWN (~25%).

### III.    Additional information relating to ABS, ADS, and DONALD DOWN

13. AA has advised the FBI that it is aware of no contracts between AA and either ABS or ADS, and that it did not receive the goods or services for which it was

---

[2]During the time period described above, the withdrawals by AUMANN and DOWN exceeded the total amount of the deposited AA checks because both accounts had a positive balance prior to the beginning period of my analysis.

billed by ABS and ADS.  AA has further advised that review of ABS and ADS

invoices revealed that both companies have billed AA for services that are provided

to AA by other vendors which are under contract with AA.

14.   I have preliminarily reviewed some of the purchase orders paid by AA to

ABS and ADS, and this statement by AA appears to be well-supported.  For

example, both ABS and ADS have on at least one occasion been paid for purportedly

providing "ramp sweeping," "emergency snow plowing," and "water main repair"

services to AA.  AA has specifically advised the FBI that it is not aware of any

contract with ABS or ADS to provide such services, and that other companies have

provided such services under contract to AA.  In addition, a representative of

O'Hare Airport has advised me that there is no record that any individual employed

by either "Addison Business Supplies" or "A & D Supplies" has ever been authorized

to work on the secured airfield at O'Hare Airport.

15.   DONALD E. DOWN, a 53 year-old male, is a resident of Wood Dale,

Illinois.  According to records obtained from First American Bank associated with

the establishment of the ABS and ADS bank accounts, DOWN is the sole owner of

ABS and ADS.  I have been unable to locate a physical address for either business,

and could not locate incorporation records for either business through a search of

the Lexis/Nexis database.  Also, I have been unable to locate any records in the

database maintained by the Illinois Secretary of State to indicate that either ABS

or ADS is the registrant or owner of any vehicle in the state of Illinois.

16.   Prior to their deposit into ABS's account at First American Bank, checks

- 6 -

issued by AA payable to ABS were mailed to P.O. Box 1332, Addison, Illinois,

60101. Those issued by AA payable to ADS were mailed to P.O. Box 92053, Elk

Grove Village, Illinois, 60009. According to records obtained from the U.S. Postal

Service, the ABS and ADS post office boxes are rented by DONALD DOWN, and the

address of record for both is DOWN's home address in Wood Dale, Illinois.

### IV.    AUMANN's assets and finances

### Summary

17. Records that I have obtained from various sources provide probable

cause to believe that many assets purchased by AUMANN between January 2002

and the present were purchased with funds traceable directly or indirectly to the

scheme to defraud. Additionally, it appears that recurring monthly payments for

previously purchased assets that were financed by AUMANN are also traceable

directly or indirectly to the fraud scheme. As such, I have been advised that they

are subject to seizure and forfeiture civilly pursuant to 18 U.S.C. § 981(a)(1)(C).[3]

18. As noted previously above, I have reviewed records relating to

AUMANN's pay from AA, and since 2002, his net bi-monthly paycheck was

typically in the range of $50 - $75. My preliminary review of various financial

records indicates that since 2002, AUMANN has purchased or made payments for

assets that appear to well-exceed what one would expect for an individual with an

---

[3]While seizure is presently requested for civil forfeiture purposes, the subject
proceeds may potentially be forfeitable criminally pursuant to 18 U.S.C. § 981(a)(1)(C) and
28 U.S.C. § 2461(c).

annual salary on the order of his current salary of $52,000 per year.[4]

19.    Although analysis of AUMANN's finances and purchases is on-going, based upon my preliminary review, it appears that AUMANN is currently paying recurring monthly expenses in excess of $15,000 per month relating to 2 homes, a condominium, numerous vehicles and boats, and monthly payments to a dancer in Missouri.

20.    I have also begun to review records relating to AUMANN's bank accounts, real estate, and other assets, and expenditures during the time period from 2002 to the present.  A summary of the available information relating to these assets, which comes from various sources, such as real estate title records, vehicle registration information, and records obtained from financial institutions, is provided below.  Based upon this information relating to AUMANN's assets and other information contained in this Affidavit, there is probable cause to believe the property described below constitutes or is derived from proceeds traceable directly or indirectly to a violation of Title 18, United States Code, Section 1341.

**Financial institution accounts**

21.    **Citibank account** - The vast majority of the $2,400,000 in checks

---

[4]In reviewing AUMANN's financial records, I have identified funds being deposited into a Kane County Teachers Credit Union (KCTCU) account.  Also, I have reviewed a financing application submitted by AUMANN in connection with his purchase of a vehicle on August 6, 2004, which indicated that his wife had been retired from employment with the Elgin school system for approximately 5 years.  Although I have not obtained records from KCTCU yet relating to the KCTCU account, based upon the representation that AUMANN's wife has been retired and other information contained in this affidavit, I do not believe review of the KCTCU account would have any material affect on the probable cause determination in this case.

payable to AUMANN written from the ABS and ADS accounts at First American bank were deposited by AUMANN into a Citibank account, no. 910348152, maintained in AUMANN's name with a mailing address of 465 W. Dominion Drive, Unit # 108, Wood Dale, Illinois (the "Citibank Account"). Most of AUMANN's day-to-day banking activity appears to occur out of this account. According to the last statement the FBI has received, the balance in the account was $4,580.88, for the statement ending October 1, 2007.

22. **American Airlines Credit Union** - As previously discussed above, since 2002, approximately $500 of every paycheck issued by AA to AUMANN is directed to an American Airlines Credit Union account, no. 3213628222, maintained in AUMANN's name with a mailing address of 465 W. Dominion Drive, Unit # 108, Wood Dale, Illinois. According to a mortgage application submitted by AUMANN to National City Mortgage on approximately June 17, 2005, the account balance in this AA credit union account was approximately $160,000.

**Real Estate**

**409 Hunt Club Drive, St. Charles, IL (Single Family Residence)**

23. On or about July 15, 1999, AUMANN purchased what appears to be a single family residence located at 409 Hunt Club Drive, St. Charles, Illinois. The legal description of this property is as follows:

> LOT 23 IN THE HUNT CLUB UNIT 1, BEING A SUBDIVISION OF PART OF THE WEST ½ OF SECTION 26 AND THE EAST ½ OF SECTION 27, ALL IN TOWNSHIP 40 NORTH, RANGE 8, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 22, 1988 AS DOCUMENT

1949388, IN KANE COUNTY, ILLINOIS.

Commonly known as: 409 Hunt Club Drive, St. Charles, Illinois

Permanent Real Estate Index Number:09-26-154-008

My preliminary review of financial records indicates that the purchase price was

$392,000 and    at the real estate transaction included a mortgage in the amount of

approximately $2      According to a recent "drive-by" appraisal, the property

h    a value of ap      ately $580,000.

24.    The           ntly received documents from MidAmerica Bank relating to

    mortgage for this      rty indicating that the balance was $222,767.99 as of

          5, 2007.  The monthly payment on the mortgage in October 2007 was

$           MANN with a check from the Citibank Account.

### Dominion Drive, Unit # 108, Wood Dale, IL (Condominium)

25.          about December 2, 1993, AUMANN purchased what appears to be

a condominium residence located at 465 W. Dominion Drive, Unit # 108, Wood

Dale, Illinois.  The legal description of this property is as follows:

PARCEL ONE:

> UNIT NO. 108 TOGETHER WITH AN UNDIVIDED .7303 PERCENT
> IN THE COMMON ELEMENTS APPURTENANT TO SAID UNIT IN
> DOMINION PLAZA ONE BUILDING NO. 1-A IN THE NORTHWEST
> 1/4 OF SECTION 21, TOWNSHIP 40 NORTH, RANGE 11, EAST OF
> THE THIRD PRINCIPAL MERIDIAN, IN DUPAGE COUNTY,
> ILLINOIS, ACCORDING TO THE DECLARATION OF
> CONDOMINIUM OWNERSHIP AND EASEMENTS, RESTRICTIONS
> AND COVENANTS AND PLATS OF SURVEY ATTACHED
> THERETO AS EXHIBIT "D" RECORDED DECEMBER 30, 1974 AS
> DOCUMENT NUMBER R74-64293 AND A CERTIFICATE OF
> CORRECTION TO THE PLAT OF THE SURVEY RECORDED

JANUARY 10, 1975 AS DOCUMENT NUMBER R75-1280 IN THE
OFFICE OF THE RECORDER OF DEEDS OF DUPAGE COUNTY,
ILLINOIS.

PARCEL TWO:

PERPETUAL AND EXCLUSIVE EASEMENT FOR PARKING
PURPOSES IN AND TO PARKING SPACE NO. 17 AND 18 AS
DEFINED AND SET FORTH IN SAID DECLARATION AND
SURVEY.

PARCEL THREE:

PERPETUAL AND EXCLUSIVE EASEMENT FOR STORAGE
PURPOSES IN AND TO STORAGE GYMCO NO. 104 AS DEFINED
AND SET FORTH IN THE SECOND AMENDMENT TO
DECLARATION OF CONDOMINIUM OWNERSHIP AND OF
EASEMENTS, RESTRICTIONS AND COVENANTS FOR DOMINION
FLARR THE CONDOMINIUM NO. 1-3 RECORDED MARCH 11,
1977 AS DOCUMENT NO. R77-16776.

Commonly known as: 465 W. Dominion Drive, #108, Wood Dale, Illinois

Permanent Real Estate Index Number: 03-21-113-006

My preliminary review of financial records indicates that the purchase price was
$80,000. The existing mortgage with Citibank has $61,000 outstanding. According
to a recent "drive-by" appraisal, the property has a value of approximately
$173,500.

26. According to the records obtained from Citibank, AUMANN's monthly
mortgage payment for this condominium, received on October 4, 2007, was $784.50
and was paid from the Citibank Account.

27. According to review of recent activity in the Citibank Account, AUMANN
wrote checks payable to "Dominion Tower Condo" in the amount of $596.32 during

August, September, and October 2007. Based upon the name of the payee on these

checks and the fact that they are paid monthly by AUMANN, I believe these checks

are monthly condominium association dues or fees paid by AUMANN for this unit.

### Missouri riverfront residence

28. On or about August 20, 2002, AUMANN purchased a parcel of real estate

and later constructed what appears to be a single family residence at 538 Kays

Point Road, #7, Four Seasons, Missouri. The legal description of this property is as

follows:

> ALL OF LOT NO. FIVE HUNDRED THIRTY-EIGHT (538) OF "KAY'S
> POINT NO. 7" A SUBDIVISION OF RECORD IN CAMDEN COUNTY
> MISSOURI, ACCORDING TO THE PLAT THEREOF ON FILE AND
> OF RECORD AT BOOK 14, PAGE 35, CAMDEN COUNTY
> RECORDER'S OFFICE.

Commonly known as: 538 Kays Point Road, #7, Four Seasons, Missouri

Permanent Real Estate Index Number: 014-020-0000-0007062-000

According to Missouri Tax Assessor records I have reviewed from the WestLaw

database, the property has a "calculated land value" of $116,300, and a "calculated

improvement value" of $549,800.

29. On or about August 20, 2002, AUMANN wrote a check from the

Citibank Account payable to Central Bank of Lake of the Ozarks in the amount of

$204,740.38. Although I have not received documents from the closing on this sale,

based upon the amount, the timing, and the name of the payee, I believe this check

represents a down payment from AUMANN on the purchase of the real estate

parcel and/or construction of the home at 538 Kays Point Road, #7, Four Seasons,

Missouri.

30.   The FBI recently received records from National City Bank relating to a mortgage for this property.  According to the records received and reviewed thus far, beginning in August 9, 2005, and continuing through November 5, 2007, AUMANN has made monthly payments on a $502,000 mortgage of approximately $4,500 per month.

31.   On or about October 10, 2007, I received pictures taken by a law enforcement agent of the above-described property, taken from the Osage River, Lake of the Ozarks, which depicts an elaborate docking system with space for at least four watercraft associated with AUMANN's riverfront property.   Financial records that I have reviewed indicate that AUMANN purchased this docking system in approximately 2002, paying approximately $31,000.  Further information relating to AUMANN's watercraft is provided below.

**Watercraft**

32.  **Thirty-Five Foot Yacht** - On or about July 21, 2003, AUMANN purchased a 1999 model year 35' Cruiser Yacht "Dream On II," VIN# CRSUSW85D999, Registration # MO2484US, for $135,000.  According to information maintained by the state of Missouri, the boat is registered in AUMANN's name at 409 Hunt Club Drive, St. Charles, Illinois.

33.  **Yamaha Waverunners** - On or about January 17, 2004, AUMANN purchased two 2003 model year Yamaha Waverunners: (i) Model #XA800AB4, VIN# YAMA2436H203, Registration # MO7579FC; and (ii) 2003 Yamaha, Model

XA800ABY, VIN# YAMA1243I203, Registration # MO7578FC.  Based upon my

preliminary review of financial records, it appears that AUMANN paid the

purchase price in full with a check from the Citibank Account.  According to

information maintained by the state of Missouri, the Waverunners are registered in

AUMANN's name at 465 W. Dominion Dr., Wood Dale, Illinois.

34.  **Twenty-Two Foot Power Boat** - On or about August 16, 2004,

AUMANN purchased a 1986 model year, 22' Sea Ray, VIN # SERV1173D686,

Registration # MO9614CB, for $11,000.  Based upon my preliminary review of

financial records, it appears that AUMANN paid the purchase price in full with a

check from the Citibank Account.  According to records maintained by the state of

Missouri, the boat is registered in AUMANN's name at 7 Kays Point Ct, Lake

Ozark, Missouri.

**Vehicles**

35.  Review of records relating to the Citibank Account indicate that for the

last several months, AUMANN has made monthly payments of $1,769.46 to Ford

Motor Credit, although in some months he has made additional payments to Ford

Motor Credit as well.  Records maintained by the the Illinois Secretary of State, and

additional financial records described below, also indicate that AUMANN is the

owner of a number of vehicles.

36.  **2007 Lincoln Zephyr** - On or about September 1, 2007, AUMANN

purchased a 2007 Lincoln Zephyr, VIN# 3LNHM28T27R630402, Illinois license no.

X700416, for approximately $39,317.41.  AUMANN made a down payment of

$20,000 through the issuance of a check from the Citibank Account to Dan Nigri, a Lincoln Mercury dealership. It appears from review of documents obtained from the dealership that Aumann is making monthly payments of $536.60 to Ford Motor Credit. According to records maintained by the Illinois Secretary of State, the vehicle is registered to GARY AUMANN at 465 Dominion Court, Wood Dale, Illinois.

37. **2006 Lincoln Mark LT Pick-Up Truck** - On or about February 28, 2006, AUMANN purchased a 2006 Lincoln Mark LT Pick-Up truck, VIN# 5LTPW18576FJ16172, Illinois license no. 66369H-B, for approximately $61,019.33. AUMANN made a down payment of $20,000, including a $15,000 check written from the Citibank Account, to Elmhurst Lincoln Mercury, Grand Avenue, Elmhurst, Illinois. According to records maintained by the Illinois Secretary of State, the vehicle is registered to GARY AUMANN at 465 Dominion Court, Wood Dale, Illinois.

38. **2005 Ford Mustang** - On or about July 30, 2005, AUMANN purchased a 2005 Ford Mustang S281, VIN# 1ZVFT82HX55195065, Illinois license no. 8351155, for approximately $58,122.46. AUMANN made a payment of $27,000 from the Citibank Account to Larry Roesch Ford and a $1,000 cash deposit. It appears from review of records obtained from the dealership that AUMANN is making monthly payments of $ 399.52 to Ford Motor Credit. According to records maintained by the Illinois Secretary of State, the vehicle is registered to GARY AUMANN at 465 Dominion Court, Wood Dale, Illinois.

39. **2004 Mercury Mountaineer** - On or about August 7, 2004, AUMANN purchased a 2004 Mercury Mountaineer, VIN #4M2DU86W34ZJ45867, Illinois license no. X687454, for $39,232.27. AUMANN traded in a 1999 Honda Accord, valued at $6,500. According to records maintained by the Illinois Secretary of State, AUMANN sold or transferred title of this vehicle to Individual AD on August 20, 2007, and the vehicle is registered to 409 Hunt Club Drive, St. Charles, Illinois, a residence titled in GARY AUMANN's name. I believe that Individual AD, 21 years old, is the son of AUMANN's wife.

40. **2002 Lincoln Navigator** - On or about August 31, 2001, AUMANN purchased a 2002 Lincoln Navigator, VIN # 5LMFU28R32LJ01735, Illinois license no. 1767742, for $52,460.00. AUMANN received $20,639.00 for the trade-in of a 1997 Ford Expedition, and made a down payment of $200. It appears from review of records obtained from the dealership that AUMANN is making monthly payments of $653.85 to Ford Motor Credit. According to records maintained by the Illinois Secretary of State, the vehicle is registered to Gary/Joan AUMANN at 409 Hunt Club Drive, St. Charles, Illinois.

41. **2002 Ford Pick-Up F350** - On or about January 1, 2007, AUMANN purchased a 2002 Ford F350 Pick-Up Truck, VIN# 1FTWW33F12ED60913, Illinois license no. 52698M-B, for $27,918.57. AUMANN made a down payment of $10,000 through the issuance of a check payable to Larry Roesch Ford, 1200 Busse Road, Elk Grove, Illinois. The purchase of this vehicle was financed in part by Fifth Third Bank, and on August 10, 2007, AUMANN paid off the Fifth Third loan in the

- 16 -

amount of $16,610 through the issuance of a check from the Citibank Account. According to records maintained by the Illinois Secretary of State, the vehicle is registered to GARY AUMANN at 465 Dominion Court, Wood Dale, Illinois.

42. **2000 Ford 1SV Pick-Up Truck** - On or about May 21, 2005, AUMANN purchased a 2000 Ford Pick-Up Truck, VIN# 2FTZF0735YCB10987, Illinois license no. 27041G-B, for $20,000. AUMANN made a payment of $11,949.49 through the issuance of a check to Dan Nigri Lincoln Mercury. AUMANN traded in a 2001 Cougar and received $8,500 towards the purchase of the truck. According to records maintained by the Illinois Secretary of State, the vehicle is registered to GARY AUMANN at 465 Dominion Court, Wood Dale, Illinois.

43. **1941 Willy's vehicle** - Between approximately September through December 2006, AUMANN purchased a 1941 Willy's vehicle, VIN# W3544441, Illinois license no. 131517AV, for $145,000. AUMANN made payments of $45,000, $45,000, $45,000, $10,000 through the issuance of four checks from the Citibank Account payable to George Saab, which appear to be linked to the purchase of this vehicle by the handwritten note, "1941 Willys" on the face of one or more of the checks. According to records maintained by the Illinois Secretary of State, the vehicle is registered to GARY AUMANN at 465 Dominion Court, Wood Dale, Illinois.

44. **1961 Cushman Scooter** - On or about February 26, 2007, AUMANN purchased a 1961 Cushman Motorscooter, VIN# 765075605, Illinois license no. 53485av. According to records maintained by the Illinois Secretary of State, the

vehicle is registered to GARY AUMANN at 465 Dominion Court, Wood Dale,

Illinois. The FBI has not yet obtained information pertaining to the price or a down

payment toward the purchase of this vintage scooter.

45. **1996 Harley Davidson** - On or about February 26, 2007, AUMANN

purchased a 1996 Harley Davidson Motorcycle, VIN# 1HD1CAP14TY221783,

Illinois license no. MCY BG1462. According to records maintained by the Illinois

Secretary of State, the motorcycle is registered to GARY AUMANN at 465

Dominion Court, Wood Dale, Illinois. The FBI has not yet obtained information

pertaining to the price or a down payment toward the purchase of this motorcycle.

**Jewelry**

46. According to records received from Jared Jewelers, on or about November

23, 2002, AUMANN purchased $24,771 worth of merchandise including two Rolex

watches. One Rolex watch was purchased for $6,270 and the second Rolex watch

was purchased for $11,655. On this date, AUMANN paid for these items by putting

$5,300 on a credit card and opening a Jared Store credit for the remaining $21,189.

A number of payments made were to Jared Jewelers in the form of checks written

from the Citibank Account in amounts totaling $19,886.

47. According to records received from Razny Jewelers, Addison, Illinois,

between approximately December 2003 and March 2006, AUMANN spent more

than $54,000 on various items of jewelry, described as follows: (i) 18 karat white

gold bracelet with 30 round diamonds; (ii) 14 karat white gold earrings, total

weight 1.46; (iii) 2.01 princess cut diamond ring with a platinum setting; (iv)

- 18 -

platinum with pink sapphire ring 2.20 karat weight, plus a white karat pendent; (v)

18 karat white gold bracelet with pink sapphires; (vi) mens Breitling Navitimer

watch and strap; (vii) men's Breitling watch and strap plus deployment.

### Monthly payments to dancer, Individual LA

48.   Beginning in approximately December 2003 and continuing through

approximately October 2007, AUMANN has issued checks written on the Citibank

Account on nearly a monthly basis payable to Individual LA in the amount of

approximately $4,000 each.  The checks have generally been negotiated through an

account at the Central Bank, Lake of the Ozarks, in Missouri.  The FBI has

received information maintained by the State of Missouri indicating that a drivers

licensed has been issued to a female named Individual LA with an address in the

vicinity of Lake of the Ozarks, and a local law enforcement agent from that vicinity

has advised the FBI that Individual LA is a dancer at a club called Earth Angels.

### V.    Additional information relating to the Target Residence

49.  The Target Residence is 465 W. Dominion Drive, Unit #108, Wood Dale,

Illinois.  Based upon my review of bank records, the vehicle registrations noted

above and other information, I believe that AUMANN lives at the Target Residence.

Also, on or about November 30, 2007, and December 13, 2007, I observed

AUMANN's 2007 Lincoln vehicle parked in the parking lot of the Target Residence.

50.   In addition, as described above, there is probable cause to believe that a

number of assets owned by AUMANN are subject to seizure, and there is a

reasonable probability that AUMANN maintains records relating to his ownership

or purchase of such assets at his residence, as well as other records relating to the receipt and disposition of proceeds of the fraud scheme. For example, funds obtained by AUMANN from the ABS and ADS bank accounts were frequently deposited into AUMANN's account at Citibank, and monthly statements for the account are mailed to the Target Residence. Also, the Target Residence is listed as AUMANN's address of record in AA's human resources system.

51. Based on my training, experience, participation in other investigations, and discussions with other experienced Special Agents regarding their prior criminal fraud investigations, I know that it is common for individuals committing mail and wire fraud to maintain at their residence records relating to their execution of the crime, as well as the receipt, location, and disposition of the proceeds of these crimes, on documents, as well as on computer hardware, software, and other electronic data storage devices.

52. In addition, based upon my training, experience, participation in other investigations, and discussion with more experienced Special Agents regarding their past criminal investigations, including Special Agents trained in the recovery of evidence from computer-related devices, I know that files which the average user believes have been "deleted" from a computer can be recovered from such devices when searched by a law enforcement official trained in the recovery of such data.

53. In order to completely and accurately retrieve data maintained on a computer or computer-related devices (such as personal digital assistants, flash memory devices, and recordable compact discs) and to ensure accuracy and

completeness of such data it is generally necessary that computer equipment and software be seized and subsequently processed by a qualified computer specialist in a laboratory setting due, in part, to the: volume of data stored, which can be in excess of thousands of pages of information and require a long period of time to process; format of the data, which may require particular hardware or software to properly interpret; methods of concealment or encryption, which may require particular hardware or software and additional time to interpret; need to properly preserve evidence in an unaltered state, which may require creating digital copies of the original evidence for review.  Analysis of such data typically is impractical to perform on site due to a lack of all of the proper tools required on site.  I believe that forensic analysis in a laboratory setting of any computers seized during execution of this search warrant will be required.

54.  I understand that this warrant will not authorize the "seizure" of computers and related media within the meaning of Rule 41(c) of the Federal Rules of Criminal Procedure.  Rather this warrant authorizes the removal of computers and related media so that they may be searched in a secure environment.

55.  With respect to the search of any computers or electronic storage devices seized from the location identified in Attachment A hereto, the search procedure of electronic data contained in any such computer may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein);

a.  examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein;

b.  searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.  surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein;

d.  opening or reading portions of files in order to determine whether their contents fall within the items to be seized as set forth herein;

e.  scanning storage areas to discover data falling within the list of items to be seized as set forth herein, to possibly recover any such recently deleted data, and to search for and recover deliberately hidden files falling within the list of items to be seized; and/or

f.  performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B.

Any computer systems and electronic storage devices removed from the premises during the search will be returned to the premises within a reasonable period of time not to exceed 30 days, as dictated by the volume and complexity of the items seized, excluding any items or materials deemed to be contraband or materially relevant to this investigation, or unless otherwise ordered by the Court.

## VI.    An execution the fraud scheme

56.  AA has advised the FBI that on or about August 20, 2007, AA mailed check number 3940800, payable to Addison Business Supplies in the amount of

$30,188.86. The check was sent via U.S. mail from Tulsa, Oklahoma, in the normal

course of business by AA, addressed to Addison Business Supply at P.O. Box 1332,

Addison, Illinois, 60101. According to records obtained from First American Bank,

the check was deposited into the ABS account on or about August 27, 2007.

### VII.  Conclusion

57.  Based upon the foregoing, there is probable cause to believe: (i) that

AUMANN and DOWN have violated Title 18, United States Code, Section 1341;

(ii), that a search of the Target Residence will recover evidence, instrumentalities,

and proceeds of this violation of law; and (iii) that the following assets are subject to

seizure and forfeiture civilly pursuant to 18 U.S.C. § 981(a)(1)(C) and 981(b):[5]

a.  All funds in Citibank account no. 910348152
b.  All funds in American Airlines Credit Union account no. 3213628222
c.  1999 model year 35' Cruiser Yacht "Dream On II," VIN# CRSUSW85D999, Registration # MO2484US;
d.  2003 Yamaha Waverunner, VIN# YAMA2436H203, Registration # MO7579FC;
e.  2003 Yamaha Waverunner, VIN# YAMA1243I203, Registration # MO7578FC;
f.  1986 model year, 22' Sea Ray, VIN # SERV1173D686, Registration # MO9614CB;
g.  2007 Lincoln Zephyr, VIN# 3LNHM28T27R630402, Illinois license no. X700416;
h.  2006 Lincoln Mark LT Pick-Up truck, VIN# 5LTPW18576FJ16172, Illinois license no. 66369H-B;
i.  2005 Ford Mustang S281, VIN# 1ZVFT82HX55195065, Illinois license no. 8351155;
j.  2004 Mercury Mountaineer, VIN #4M2DU86W34ZJ45867,

---

[5]I have been advised that, pursuant to 18 USC 981(b)(3), and 28 U.S.C. 1355(b)(1), venue for seizure and forfeiture actions is proper in any district where any of the acts giving rise to forfeiture occurred.

Illinois license no. X687454;

k.   2002 Lincoln Navigator, VIN # 5LMFU28R32LJ01735, Illinois license no. 1767742;

l.   2002 Ford F350 Pick-Up Truck, VIN# 1FTWW33F12ED60913, Illinois license no. 52698M-B;

m.   2000 Ford Pick-Up Truck, VIN# 2FTZF0735YCB10987, Illinois license no. 27041G-B;

n.   1941 Willy's vehicle, VIN# W3544441, Illinois license no. 131517AV;

o.   1961 Cushman Motorscooter, VIN# 765075605, Illinois license no. 53485av; and

p.   1996 Harley Davidson Motorcycle, VIN# 1HD1CAP14TY221783, Illinois license no. MCY BG1462.

David F. Mertz, Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO BEFORE ME
this 17th day of December, 2007.

SIDNEY I. SCHENKIER
U.S. MAGISTRATE JUDGE

- 24 -