UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN W DARRAH

MAGISTRATE JUDGE SCHENKIER

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 07 CR 844 |
| v. | ) |
| | ) Title 18, United States Code, |
| GARY AUMANN, | ) Sections 1341, 1346, and 2 |
| DONALD DOWN, and | ) |
| THOMAS ALESSI | ) |

**FILED**

**COUNT ONE**

JN  MAR 0 4 2008

The SPECIAL FEBRUARY 2008-1 GRAND JURY charges:

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

1. At times material to this indictment:

   a. American Airlines, also known as AMR Corporation, conducted substantial operations at O'Hare International Airport in Chicago, Illinois.

   b. Defendant GARY AUMANN was employed by American Airlines as the Planner of Facility Maintenance ("PFM"). As the PFM, defendant AUMANN supervised and managed administrative functions in the Facilities Maintenance division, such as (i) sourcing supplies, parts, and vendor services, (ii) repair of American's terminals, hangar areas, cargo facilities and ramp/parking areas, (iii) reviewing invoices and approving invoices for processing in accordance with corporate guidelines, and (iv) maintaining oversight of vendor performance for activities related to maintenance. Defendant AUMANN also developed the annual facilities maintenance budget, tracked its performance on a monthly basis, and provided senior management with reports documenting performance and variances from the budget.

c. In his capacity as the PFM for American Airlines at O'Hare, AUMANN had authority to approve purchase orders of less than $10,000. Payments for goods or services over $10,000 could not be authorized by AUMANN in the absence of supervisory approval unless the bill for such products or services was supported by a vendor contract.

d. Defendant DONALD DOWN maintained accounts at First American Bank held in the name of Addison Business Supplies (ABS) and A & D Supplies (ADS). The address of record for ABS and ADS were post office boxes in Addison, Illinois, and Elk Grove Village, Illinois, respectively, both of which were rented by DOWN.

e. Defendant THOMAS ALESSI maintained a number of bank accounts at Access Federal Credit Union, including one held in the name of TR Industrials. The address of record for TR Industrials was a post office box in Chicago, Illinois, rented by ALESSI.

f. Individual A maintained an account at Harris Bank held in the name of Feeder Industries, and an account at LaSalle Bank in the name of Advanced Maintenance Products (AMP). The address of record for Feeder Industries was in the 800 East block of Northwest Highway in Palantine, Illinois. The address of record for AMP was a post office box in Streamwood, Illinois.

2. Beginning in approximately 1997, and continuing to approximately December 18, 2007, in the Northern District of Illinois, Eastern Division, and elsewhere,

GARY AUMANN,
DONALD DOWN,
and THOMAS ALESSI,

defendants herein, and others including Individual A, devised and participated in a scheme to defraud American Airlines, and to obtain money and funds by means of materially false and fraudulent pretenses, representations, and promises, and to defraud AA of its intangible right to the honest services of defendant AUMANN, which scheme is further described below.

3. It was part of the scheme that defendant GARY AUMANN directed defendants DONALD DOWN and THOMAS ALESSI, and Individual A, to submit to American Airlines invoices requesting payment for goods and services that had never been provided to American Airlines (the "bogus invoices") so that defendant AUMANN, in his position as the PFM for American Airlines at O'Hare, could cause American Airlines to pay the bogus invoices.

4. It was further part of the scheme that defendant DONALD DOWN agreed to transmit bogus invoices purportedly issued by ABS and ADS to American Airlines well-knowing that defendant GARY AUMANN would cause American Airlines to pay the bogus invoices.

5. It was further part of the scheme that defendant THOMAS ALESSI agreed to transmit bogus invoices purportedly issued by TR Industrials to American Airlines well-knowing that defendant GARY AUMANN would cause American Airlines to pay the bogus invoices.

6. It was further part of the scheme that Individual A agreed to transmit bogus invoices purportedly issued by Feeder Industries and AMP to American Airlines well-knowing that defendant GARY AUMANN would cause American Airlines to pay the bogus invoices.

7. It was further part of the scheme that defendants GARY AUMANN and DONALD DOWN agreed to share the proceeds derived from checks issued by American Airlines to pay the bogus ADS and ABS invoices.

8. It was further part of the scheme that defendants GARY AUMANN and THOMAS ALESSI agreed to share the proceeds derived from checks issued by American Airlines to pay the bogus TR Industrial invoices.

9. It was further part of the scheme that defendant GARY AUMANN and Individual A agreed to share the proceeds derived from checks issued by American Airlines to pay the bogus Feeder Industries and AMP invoices.

10. It was further part of the scheme that defendant GARY AUMANN, in his capacity as the PFM at O'Hare, knowingly approved payment for bogus invoices transmitted by defendants DONALD DOWN and THOMAS ALESSI, and Individual A, to American Airlines.

11. It was further part of the scheme that defendant GARY AUMANN knowingly and falsely represented to American Airlines that bogus invoices in amounts exceeding $10,000 transmitted by the co-defendants were supported by a contract with American Airlines, when in truth and fact, as defendant GARY AUMANN well-knew, such invoices were not supported by contract.

12. It was further part of the scheme that by causing the bogus invoices to be submitted and approved for payment by American Airlines, defendants GARY AUMANN, DONALD DOWN and THOMAS ALESSI, and Individual A, fraudulently caused American Airlines to transmit payment for the bogus invoices through the U.S. mail to the mailing addresses of the purported vendors of such goods and services.

13. It was further part of the scheme that between approximately 1997 and September 2007, defendants GARY AUMANN and DONALD DOWN fraudulently caused American Airlines to issue checks payable to ABS and ADS in amounts totaling approximately $3,777,000.

14. It was further part of the scheme that between approximately 1997 and September 2007, defendants GARY AUMANN and THOMAS ALESSI fraudulently caused American Airlines to issue checks payable to TR Industrials in amounts totaling approximately $1,148,000.

15. It was further part of the scheme that between approximately 1997 and December 2005, defendant GARY AUMANN and Individual A fraudulently caused American Airlines to issue checks payable to AMP and Feeder Industries in amounts totaling approximately $1,161,000.

16. It was further part of the scheme that defendants DONALD DOWN and THOMAS ALESSI, and Individual A, caused checks issued by American Airlines in satisfaction of the bogus invoices to be negotiated through the bank

accounts associated with ABS, ADS, TR Industrials, AMP, and Feeder Industries, and shared the proceeds of the checks with defendant GARY AUMANN.

17. It was further part of the scheme that defendants GARY AUMANN, DONALD DOWN, and THOMAS ALESSI concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

18. As a result of the scheme to defraud, defendants GARY AUMANN, DONALD DOWN and THOMAS ALESSI, and Individual A, caused American Airlines to suffer losses totaling approximately $6,086,000.

19. On or about August 20, 2007, at Addison, in the Northern District of Illinois, and elsewhere,

GARY AUMMAN, and
DONALD DOWN,

defendants herein, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be delivered by U.S. mail according to the directions thereon, an envelope from American Airlines, Tulsa, Oklahoma, addressed to Addison Business Supplies, P.O. Box 1332, Addison, Illinois, 60101, which envelope contained a check payable to Addison Business Supplies in the amount of $30,188.86;

In violation of Title 18, United States Code, Sections 1341, 1346, and 2.

## COUNT TWO

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1 - 18 of Count One of this indictment.

2. On or about October 26, 2006, at Elk Grove Village, in the Northern District of Illinois, and elsewhere,

GARY AUMMAN, and<br>DONALD DOWN,

defendants herein, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be delivered by U.S. mail according to the directions thereon, an envelope from American Airlines, Tulsa, Oklahoma, addressed to A & D Supplies, P.O. Box 92053, Elk Grove Village, Illinois, 60009-2053, which envelope contained a check payable to A & D Supplies in the amount of $5,847.88;

In violation of Title 18, United States Code, Sections 1341, 1346, and 2.

## COUNT THREE

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1 - 18 of Count One of this indictment.

2. On or about December 28, 2006, at Chicago, in the Northern District of Illinois, and elsewhere,

> GARY AUMMAN, and
> THOMAS ALESSI,

defendants herein, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be delivered by U.S. mail according to the directions thereon, an envelope from American Airlines, Tulsa, Oklahoma, addressed to TR Industrials, P.O. Box 166138, Chicago, Illinois, 60616-6138, which envelope contained a check payable to TR Industrials in the amount of $3,044.34;

In violation of Title 18, United States Code, Sections 1341, 1346, and 2.

## COUNT FOUR

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1 - 18 of Count One of this indictment.

2. On or about May 25, 2006, at Chicago, in the Northern District of Illinois, and elsewhere,

> GARY AUMMAN, and
> THOMAS ALESSI,

defendants herein, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be delivered by U.S. mail according to the directions thereon, an envelope from American Airlines, Tulsa, Oklahoma, addressed to TR Industrials, P.O. Box 166138, Chicago, Illinois, 60616-6138, which envelope contained a check payable to TR Industrials in the amount of $2,488.76;

In violation of Title 18, United States Code, Sections 1341, 1346, and 2.

## COUNT FIVE

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1 - 18 of Count One of this indictment.

2. On or about December 27, 2005, at Palantine, in the Northern District of Illinois, and elsewhere,

GARY AUMMAN,

defendant herein, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be delivered by U.S. mail according to the directions thereon, an envelope from American Airlines, Tulsa, Oklahoma, addressed to Feeder Industries Ltd, PMB 107, Suite 700, 800 East Northwest Highway, Palantine, Illinois, 60067, which envelope contained a check payable to Feeder Industries in the amount of $ 3,378.80;

In violation of Title 18, United States Code, Sections 1341, 1346, and 2.

## COUNT SIX

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1.  The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1 - 18 of Count One of this indictment.

2.  On or about May 12, 2004, at Palantine, in the Northern District of Illinois, and elsewhere,

GARY AUMMAN,

defendant herein, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be delivered by U.S. mail according to the directions thereon, an envelope from American Airlines, Tulsa, Oklahoma, addressed to Feeder Industries Ltd, PMB 107, Suite 700, 800 East Northwest Highway, Palantine, Illinois, 60067, which envelope contained a check payable to Feeder Industries in the amount of $ 1,260.47;

In violation of Title 18, United States Code, Sections 1341, 1346, and 2.

# FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations contained in Counts One through Six of this Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of their violations of Title 18, United States Code, Section 1341, as alleged in the foregoing Indictment,

>GARY AUMANN,
>THOMAS ALESSI, and
>DONALD DOWN,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense(s).

3. The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to funds in the amount of $6,086,000, and the following property:

   a.  all funds in Citibank account no. xxxx48152;
   b.  all funds in American Airlines Credit Union account no. xxxxx28222;
   c.  1999 model year 35' Cruiser Yacht "Dream On II," VIN# CRSUSW85D999, registration # MO2484US;
   d.  2003 Yamaha Waverunner, VIN# YAMA2436H203, registration # MO7579FC;

-12-

e.    2003 Yamaha Waverunner, VIN# YAMA1243I203, registration # MO7578FC;

f.    1986 model year, 22' Sea Ray, VIN # SERV1173D686, registration # MO9614CB;

g.    2007 Lincoln Zephyr, VIN# 3LNHM28T27R630402, Illinois license no. X700416;

h.    2006 Lincoln Mark LT Pick-Up truck, VIN# 5LTPW18576FJ16172, Illinois license no. 66369H-B;

i.    2005 Ford Mustang S281, VIN# 1ZVFT82HX55195065, Illinois license no. 8351155;

j.    2004 Ford Expedition, VIN# 1FMFU18L94LA96004, Illinois license no. 4701850,

k.    2004 Mercury Mountaineer, VIN# 4M2DU86W34ZJ45867, Illinois license no. X687454;

l.    2004 Cadillac Escalade, VIN# 1GYEK63N64R228512, Illinois license no. DONJOAN;

m.    2002 Lincoln Navigator, VIN# 5LMFU28R32LJ01735, Illinois license no. 1767742;

n.    2002 Ford F350 Pick-Up Truck, VIN# 1FTWW33F12ED60913, Illinois license no. 52698M-B;

o.    2000 Ford Pick-Up Truck, VIN# 2FTZF0735YCB10987, Illinois license no. 27041G-B;

p.    1996 Jaguar convertible, VIN# SAJNX2745TC225265, IL license no. 3940838;

q.    1965 Chevy C10 pickup, IL license no. 70 949 E, VIN# C1445N129428;

r.    1955 Chevrolet 2-door, Illinois license no. 135119AV, VIN# VC55J117442;

s.    1941 Willy's vehicle, VIN# W3544441, Illinois license no. 131517AV;

t.    1933 Ford 2-door coupe, IL plate 117 224 AV, black w/ purple stripe, unknown Vehicle Identification Number;

u.    1961 Cushman Motorscooter, VIN# 765075605, Illinois license no. 53485av; and

v.    1996 Harley Davidson Motorcycle, VIN# 1HD1CAP14TY221783, Illinois license no. MCY BG1462;

w.    2004 FA78 Tilt Tandem vehicle trailer, VIN# 4J6TC24284B061084, Illinois license no. 1930 HZ TA;

x.    cash totaling approximately $7,909, 16 watches, 1 bracelet, and 1 necklace seized on December 18, 2007, from the residence of defendant GARY AUMANN; and

y.    4 earrings, 1 necklace, and 1 ring seized on December 18, 2007, from Individual LA in Lake Ozark, Missouri.

z. The real property commonly known as 465 W. Dominion Drive, Unit #108, Wood Dale, Illinois and legally described as:

PARCEL ONE:

UNIT NO. 108 TOGETHER WITH AN UNDIVIDED .7303 PERCENT IN THE COMMON ELEMENTS APPURTENANT TO SAID UNIT IN DOMINION PLAZA ONE BUILDING NO. 1-A IN THE NORTHWEST 1/4 OF SECTION 21, TOWNSHIP 40 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN DUPAGE COUNTY, ILLINOIS, ACCORDING TO THE DECLARATION OF CONDOMINIUM OWNERSHIP AND EASEMENTS, RESTRICTIONS AND COVENANTS AND PLATS OF SURVEY ATTACHED THERETO AS EXHIBIT "D" RECORDED DECEMBER 30, 1974 AS DOCUMENT NUMBER R74-64293 AND A CERTIFICATE OF CORRECTION TO THE PLAT OF THE SURVEY RECORDED JANUARY 10, 1975 AS DOCUMENT NUMBER R75-1280 IN THE OFFICE OF THE RECORDER OF DEEDS OF DUPAGE COUNTY, ILLINOIS.

PARCEL TWO:

PERPETUAL AND EXCLUSIVE EASEMENT FOR PARKING PURPOSES IN AND TO PARKING SPACE NO. 17 AND 18 AS DEFINED AND SET FORTH IN SAID DECLARATION AND SURVEY.

PARCEL THREE:

PERPETUAL AND EXCLUSIVE EASEMENT FOR STORAGE PURPOSES IN AND TO STORAGE GYMCO NO. 104 AS DEFINED AND SET FORTH IN THE SECOND AMENDMENT TO DECLARATION OF CONDOMINIUM OWNERSHIP AND OF EASEMENTS, RESTRICTIONS AND COVENANTS FOR DOMINION FLARR THE CONDOMINIUM NO. 1-3 RECORDED MARCH 11, 1977 AS DOCUMENT NO. R77-16776.

Permanent Real Estate Index Number: 03-21-113-006.

aa. The real property commonly known as 538 Kays Point Road, #7, Four Seasons, Missouri and legally described as:
ALL OF LOT NO. FIVE HUNDRED THIRTY-EIGHT (538) OF "KAY'S POINT NO. 7" A SUBDIVISION OF RECORD IN

CAMDEN COUNTY MISSOURI, ACCORDING TO THE PLAT THEREOF ON FILE AND OF RECORD AT BOOK 14, PAGE 35, CAMDEN COUNTY RECORDER'S OFFICE.

Permanent Real Estate Index Number: 014-020-0000-0007062-000

bb. The real property commonly known as 409 Hunt Club Drive, St. Charles, Illinois and legally described as:

LOT 23 IN THE HUNT CLUB UNIT 1, BEING A SUBDIVISION OF PART OF THE WEST ½ OF SECTION 26 AND THE EAST ½ OF SECTION 27, ALL IN TOWNSHIP 40 NORTH, RANGE 8, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 22, 1988 AS DOCUMENT 1949388, IN KANE COUNTY, ILLINOIS.

Permanent Real estate Index Number: 09-26-154-008.

4. If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants

    (a) Cannot be located upon the exercise of due diligence;

    (b) Has been transferred or sold to, or deposited with, a third party;

    (c) Has been placed beyond the jurisdiction of the Court;

    (d) Has been substantially diminished in value; or

    (e) Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY