Reference (e.g., Seller & Buyer) _____

**Aumann/Siverly**

🏠 **MISSOURI** ASSOCIATION OF REALTORS®

*This Contract has important legal and tax consequences*
*If not understood, consult your attorney before signing.*

# Contract for Sale of Residential Real Estate

1 This Contract is made between _____ **Gary M and Joan F Aumann** _____ ("Seller") and
2 _____ **Matthew Siverly and/or Assigns** _____ , ("Buyer"). The
3 "Effective Date" shall be the date of final acceptance hereof, as indicated by the date adjacent to the signature of the last party to sign this
4 Contract or the Counter Offer attached hereto (*if any*).

5 **1. PROPERTY.** Seller agrees to sell and convey to Buyer and Buyer agrees to purchase from Seller, the following described real estate (*if no*
6 *legal description is included below, then legal description on Seller's deed(s) to govern, which may be confirmed by the Survey, if any, pursuant*
7 *to Section 6 below*). Such real estate and any other included property set forth below is collectively referred to herein as the "**Property**."
8 ☐ *(Check box if legal description attached)*

**Lot 538, Kay's Point #7**

| | | | | | |
|---|---|---|---|---|---|
| 9 | **45 Ginseng Court** | **Lake Ozark** | **MO** | **65049** | **Camden** |
| 10 | Street Address | City | State | Zip Code | County |

11 **2. INCLUSIONS AND EXCLUSIONS.** *Note: This Contract, and not the Seller's Disclosure Statement, multi-listing service or other*
12 *promotional material, provides for what is included in this sale. To avoid misunderstanding, the parties are urged to list below, as "Included"*
13 *or "excluded", any items which may be subject to question. The Purchase Price and the Property includes all existing improvements on the real*
14 estate and all appurtenances, fixtures and equipment (which Seller warrants to convey free and clear), including but not limited to the
15 following (*if any*):

- Attic and Ceiling Fans
- Blinds, Shades, Shutters, Storm Windows, Sashes and Doors, Screens, Awnings
- Curtain & Drapery Hardware (*only*)
- Dishwashers & Trash Compactors
- Electric Garage Door Opener(s) & Control(s)
- Exterior Lighting, Landscaping & Mailbox
- Fences (*including invisible pet systems, collars and controls*)
- Fire and Smoke Alarms .
- Fireplace Equipment and Doors (*if attached, including artificial logs*)

- Floor Coverings (*if attached*), Tacked Down & Wall to Wall Carpet
- Garbage Disposals
- Gas Fired Barbecue Grills (*Built-in*)
- Heating, Cooling, Electrical and Plumbing Fixtures & Systems (*Built-in*)
- Humidifier (*if attached*)
- Keys and Remote Entry Controls
- Lighting Fixtures
- Microwave Ovens (*Built-in*)
- Mirrors (*Attached*) & all Bathroom Mirrors
- Ovens/Ranges and Attachments
- Propane Tanks (*excluding portable tanks*)

- Radiator Shields
- Satellite Dish(es), Receiver(s), Remote(s)
- Security & Alarm Systems
- Shelving & Closet Organizers (*if attached*)
- Sprinkler Systems and Controls
- TV Antennas (*if attached*)
- Vacuum Systems (Central) & Attachments
- Ventilation and Exhaust Fans
- Water Heaters, Softeners & Sump Pump
- Window Air Conditioning Units
- Manuals and written warranties in Seller's possession pertaining to any of the foregoing

16 The following items are also included in the sale *(e.g., list any non-affixed equipment or machinery, household or other personal property)*:
17 **per Personal Property List attached, 2 well dock, dock permit, and seawall permit** _____
18 _____
19 The following items are excluded from the sale *(e.g., list any items which are leased or otherwise not owned by Seller)*:
20 _____
21 _____

22 **3. PURCHASE PRICE.**
23 **$ 660,000** _____ is the "Purchase Price" for the Property and is to be paid by Buyer as follows:
24 **$ 10,000** _____ as "Earnest Money" in the form of (*check one*):
25 ☒ personal check ☐ cashier's check ☐ other _____ , to be supplied at the time of original
26 delivery hereof as set forth at the Receipt and Acknowledgement following the end of this Contract, and which shall be deposited not later than
27 ten (10) banking days after the Effective Date in an escrow account with: _____ **Monarch Title** _____ ("Escrow Agent").
28 Escrow Agent may retain any interest earned on such deposit. If sale is closed, Earnest Money to apply toward the Purchase Price. Buyer shall
29 pay the balance of the Purchase Price by cashier's check or other form of funds acceptable to Closing Agent ("Funds") at Closing.

30 **4. CLOSING.** Subject to the terms of this Contract, this sale will be closed (meaning the exchange of the Deed for the Purchase Price,
31 together with all other documents and Funds required by this Contract, the "Closing") at the office of
_____ **Monarch Title** _____ ("Closing Agent") in

| | | | | | |
|---|---|---|---|---|---|
| 32 | **Osage Beach** | **MO** , on | **July** | **01** | , 20 **08** (the "Closing Date"). |
| 33 | City | State | Month | Day | |

34
35 Possession and all keys will be delivered to Buyer at: (*check one*) ☒ Closing or ☐ other _____

36 *Note: If possession is to be transferred on a day other than day of Closing or if the Property is tenant occupied, then the parties should*
37 *complete and attach an appropriate Rider(s). Brokers are not responsible for delivery of keys. It is recommended that Buyer change locks*
38 *following possession.*

39 Seller warrants that the Property will be vacant as of the time of delivery of possession (except for tenants or others in possession pursuant to any
40 lease or other agreement approved pursuant to this Contract), and in its present condition (together with any improvements or repairs required by
41 this Contract), ordinary wear and tear excepted.

RES-2008

Reference (e.g., Seller & Buyer) _____  **Aumann/Siverly**

5. **FINANCING.** *(Check applicable box)*

☐ A. **Not Conditioned Upon Financing.** *(Although not a condition to performance, Buyer may finance any portion of the Purchase Price).*

☐ B. **Nonconventional.** *(See attached Rider for Assumption: Seller Financing; or Government financing).*

☒ C. **Conventional.** Buyer agrees to do all things necessary, including but not limited to the execution of a completed loan application and other instruments, and to cooperate fully in order to obtain the financing necessary to complete this transaction. If Buyer does not deliver written Notice, provided by Buyer's lender, to Seller of Buyer's inability to obtain a loan commitment on the terms described below by 5:00 p.m. on the date (the "**Loan Commitment Date**") which is _____ days *(15 days if none stated)* after the Effective Date, then this condition shall be deemed waived and Buyer's performance under this Contract shall thereafter not be conditioned upon Buyer's obtaining financing; provided, however, if such lender will not give Buyer such written Notice then Buyer may directly notify Seller (on or before the Loan Commitment Date) by providing a sworn notarized affidavit that Buyer has timely complied with all of the terms of this paragraph and that despite request, Buyer was unable to obtain such written notice from lender. If Buyer has complied with the terms of this paragraph and has timely provided written Notice to Seller of Buyer's inability to obtain the loan commitment, then this Contract shall terminate with Earnest Money to be returned to Buyer.

*(Complete one or both)* Loan amount: ____80__ % of the Purchase Price, or $_____

Initial interest rate not to exceed: ____**6.5**____%.  Amortization term _____ **30**_____ years.

Type *(check one)*: ☒ Fixed Rate ☐ Adjustable Rate ☐ Other: _____

Other terms: _____
_____

*Note: A lender's loan approval process may not include an appraisal or other such comparison or determination of value of the Property. Different types of "appraisals" are available and lender underwriting requirements vary in this regard. If Buyer's performance under this Contract is to be independently conditioned upon the Property appraising at a specified value, then Buyer should complete and attach to this Contract an appropriate Rider.*

6. **TITLE AND SURVEY.** At Closing, Seller shall transfer marketable title to the Property subject only to the Permitted Exceptions, as directed by Buyer, by *(unless otherwise specifically agreed)* general warranty deed (the "**Deed**"), properly executed and in recordable form.

Within _____ days *( 10 days if none stated)* after the Effective Date *(check applicable box below)*:

☐ A.  Seller shall deliver to Buyer, at Seller's cost, a commitment (the "**Title Commitment**") to issue a current ALTA owner's policy of title insurance in the amount of the Purchase Price (the "**Owner's Policy**") at Seller's cost.

☐ B.  Seller shall deliver to Buyer an abstract of title certified to date, at Seller's cost.

☒ C.  Seller shall deliver to Buyer, a Title Commitment at Seller's cost to issue an Owner's Policy at Buyer's cost. *(Specify if otherwise)*

_____
_____

☐ D.  Buyer may order an abstractor or an authorized title insurance company to issue an abstract or Title Commitment for an Owner's Policy (both at Buyer's cost).

The Title Commitment (or abstract, as the case may be) shall be issued by the Closing Agent, unless otherwise specified. If Seller already has a survey of the Property in Seller's possession. Seller shall promptly deliver a copy to Buyer after the Effective Date. Buyer, at its sole option, expense and liability may also obtain a survey of the Property ("**Survey**") to determine if there are any defects, encroachments, overlaps, boundary line or acreage discrepancies, or other adverse matters that may be disclosed. Buyer acknowledges that all surveys are not alike *(i.e., a "spot survey" is not the same as a "stake survey")* and may not disclose all defects. *Note: Buyer should consult with its lender and the title company as to their survey requirements and in order to provide full survey coverage to Buyer.*

Buyer shall have _____ days *(20 days if none is stated)* after the Effective Date to review the Title Commitment (or abstract, as the case may be), including copies of all subdivision, use and other restrictions, rights of way and easements, and all other recorded documents referenced as exceptions therein which Buyer may desire to obtain (the "**Review Period**"), and to state in Seller in writing any objections which Buyer has to any matters shown or referred to therein and/or the Survey ("**Objections**"). If any of boxes 6A, 6B or 6C is checked and Seller does not timely deliver to Buyer the Title Commitment (or abstract, as the case may be), then Buyer may either obtain the same directly at Seller's cost or elect to terminate this Contract, in which case the Earnest Money is to be returned to Buyer. Failure to timely notify Seller of any Objections within the Review Period will constitute a waiver by Buyer of any Objections.

If Buyer does timely object, Buyer must also deliver a copy of the Survey and/or Title Commitment to Seller pertaining to such Objections. Seller shall have ____ days *(7 days if none stated)* from receipt of Buyer's Notice of Objections to agree in writing to correct the same prior to Closing at Seller's expense. If Seller does not so agree, then this Contract shall automatically terminate unless Buyer, within _____ additional days *(3 days if none stated)* after Buyer's receipt of Seller's response to Buyer's Objections, agrees in writing to accept the Title without correction of such Objections. *Note: For purposes of this subparagraph, if Seller fails to timely respond to Buyer's Objections, then Seller shall be deemed to have refused to agree to correct any such Objections.* If the Contract is terminated under this paragraph, then the Earnest Money is to be refunded to Buyer and if any defect objected to causes a failure of marketable title, then Seller shall be liable for survey and title examination charges. Seller shall be liable for clearing any exception to title that arises between the Effective Date and Closing, and any existing lien (other than general taxes and any installments of special taxes or assessments to be prorated at Closing) may be paid out of the Purchase Price proceeds. Subject thereto, any item shown on the Title Commitment, abstract or Survey (or which could have been shown on a survey) and to which Buyer does not timely submit an Objection during the Review Period, or for which Buyer waives Buyer's Objections as set forth herein, and specifically including all laws and zoning ordinances, are collectively referred to herein as the "**Permitted Exceptions**". The Owner's Policy must include mechanic's lien and inflation coverage, unless the title company issuing the Owner's Policy does not make available such coverage(s), or unless otherwise provided herein. Buyer is responsible for the cost of any lender's policy of title insurance to be issued. If this Contract is terminated for any reason, the Title Commitment, abstract or Survey *(if any)* shall be returned to Seller.

7. **INSPECTIONS.** Seller agrees to permit inspections of the Property by any qualified independent inspector or appraiser selected by Buyer and/or required by Buyer's lender, upon reasonable advance notice to Seller. Buyer may, at Buyer's option and expense, obtain written inspection reports of the Property as deemed necessary by Buyer or its lender, including but not limited to the condition or presence *(if any)* of: environmental hazards; mold; termite and wood destroying insect infestation or damage; plumbing, including water well, sewer, septic and



106 wastewater treatment systems; roof and other structural improvements; heating and air conditioning systems and equipment; electrical systems
107 and equipment; swimming pools and equipment; chimneys, flues and gas lines; basement leaks and exterior drainage; and mechanical equipment,
108 including appliances. Buyer may also review additional property data, including but not limited to flood plain data; zoning regulations; leases
109 and other occupancy agreements; general taxes; school district; square footage; and insurability of the Property ("Additional Property Data").
110 *Note: It is recommended that homeowners insurance availability be ascertained during the Inspection Period. Buyer should also contact law*
111 *enforcement officials for information pertaining to whether registered sex offenders or other convicted criminals reside in the area.*

112 Buyer shall furnish a complete copy of the written inspection report(s) and/or Additional Property Data to Seller with a written list of the
113 unacceptable condition(s) [the "Inspection Notice". *See MSC-2050*], within ___0___ days *(10 days if none stated)* after the Effective Date (the
114 "**Inspection Period**). *Note: Buyer is allowed to submit only 1 Inspection Notice during the Inspection Period. The Inspection Notice should*
115 *include all matters unacceptable to Buyer.* Buyer agrees to immediately repair any damage to the Property, and to indemnify and hold Seller
116 harmless from and against all claims, costs, demands and expenses, including without limitation reasonable attorney fees and court costs resulting
117 from these inspections. Buyer's obligations under this Section shall survive termination of this Contract.

118 If Seller has not received a written Inspection Notice by the end of the Inspection Period, Buyer shall be deemed to be satisfied with the results of
119 such inspection(s). If timely Inspection Notice is given, it shall state whether: (1) Buyer is satisfied with all the inspections; (2) Buyer intends
120 that any unacceptable conditions are to be satisfied by Seller; or (3) Buyer is terminating the Contract, with the Earnest Money to be returned to
121 Buyer. Failure to obtain any inspection shall constitute a waiver and acceptance by Buyer of any condition any inspection may have disclosed.

122 If this Contract is not terminated as provided above, Seller shall have _____ days *(7 days if none stated)* after Seller's receipt of the Inspection
123 Notice (the "**Initial Response Period**") in which to respond in writing to Buyer's Inspection Notice. *(Note: For purposes of this subparagraph,*
124 *if Seller fails to timely respond to Buyer's Inspection Notice, then Seller shall be deemed to have refused to agree to correct any alleged defects,*
125 *or to provide a monetary adjustment at Closing).* The parties shall have an additional _____ days *(3 days if none stated)* after Buyer's receipt of
126 Seller's response to Buyer's Inspection Notice to reach an agreement in writing as to who will complete and pay for the correction of the defects,
127 or as to a monetary adjustment at Closing in lieu of correction of the defects, or the Contract is to be deemed to be automatically terminated and
128 the Earnest Money shall be returned to Buyer; provided, however, that either a written commitment by Seller to correct those items submitted by
129 Buyer for correction during the Inspection Period at Seller's expense, or a written commitment by Buyer to accept the Property without
130 correction of any unacceptable condition(s) which Buyer originally objected to, shall constitute an "agreement" for purposes of this paragraph,
131 even after earlier negotiation failed to produce an agreement. *Note: A monetary adjustment may affect the terms of Buyer's loan (e.g., down*
132 *payment, interest rate and private mortgage insurance). Failure to correct a physical defect may affect Buyer's ability to obtain any required*
133 *occupancy permit. A limited warranty or service agreement may also be available for purchase regarding the Property.*

134 All Brokers may be present during any inspections and the "walk-through". Such presence shall only serve to assist in the coordination of and
135 compliance with the terms of this Contract and shall not in any way be interpreted as providing the Brokers with a special knowledge or
136 understanding of any inspection results. The parties will rely only upon the written inspection results received directly from the appropriate
137 expert(s), and acknowledge that Brokers have no expertise or responsibility in determining any defects that may be disclosed by any inspections,
138 warranties or services. Buyer acknowledges that: (1) Buyer will not rely upon Brokers in any way as to the selection or engagement of a
139 particular company for any inspection, warranty or service; (2) inspections, warranties and services may be offered by more than one company
140 and the determination to select and engage a particular company and the completeness and satisfaction of any such inspection, warranty or
141 service is the sole responsibility of Buyer; and (3) when choosing to engage a lender, inspector, warranty, service, title or repair company, or any
142 other service provider, Buyer should consider, but not be limited by, the existence of errors and omissions insurance, liability insurance, business
143 and professional licensure, membership in professional associations and years of experience. *Note: Pursuant to Missouri law, a real estate*
144 *licensee, including the broker(s) assisting Buyer and/or Seller and their respective licensees (identified in the Brokerage Relationship*
145 *disclosure Section below, collectively, the "Brokers"), shall be immune from liability for statements made by engineers, land surveyors,*
146 *geologists, environmental hazard experts, wood destroying inspection and control experts, termite inspectors, mortgage brokers, home*
147 *inspectors, or other home inspection experts unless: (1) the statement was made by a person employed by the licensee or the Broker with*
148 *whom the licensee is associated; (2) the person making the statement was selected and engaged by the licensee; or (3) the licensee knew prior*
149 *to Closing that the statement was false or the licensee acted in reckless disregard as to whether the statement was true or false. A licensee*
150 *shall not be the subject of any action and no action shall be instituted against a licensee for any information contained in any Seller's*
151 *disclosure furnished by the Seller, unless the licensee is a signatory to such or the licensee knew prior to Closing that the statement was false or*
152 *acted in reckless disregard as to whether the statement was true or false. A licensee acting as a courier of documents referenced in this*
153 *section shall not be considered to be making the statements contained in such documents.*

154 **8.  DISPOSITION OF EARNEST MONEY AND OTHER ESCROWED FUNDS AND DOCUMENTS.** Regardless of any other terms of
155 this Contract regarding forfeiture or return of Earnest Money, the Escrow Agent and/or Closing Agent (as the case may be, "Escrow Holder")
156 shall not distribute the Earnest Money or any other escrowed funds, personal property or documents held by it ("Escrow Items") without the
157 written consent of all parties to this Contract (signature on Closing Statement may constitute such consent). Absent such written consent, Escrow
158 Holder shall continue to hold said Escrow Items in escrow until: (1) Escrow Holder has a written release signed by all parties consenting to its
159 disposition; (2) a civil action is filed to determine its disposition (including an interpleader filed by Escrow Holder), at which time payment and
160 delivery of the Earnest Money and/or any other Escrowed Items may be made into court, less any attorney fees, court costs and other legal
161 expenses incurred by Escrow Holder in connection therewith; (3) a court order or final judgment mandates its disposition; or (4) as may be
162 required by applicable law. The parties specifically acknowledge and agree that whenever ownership of the Earnest Money or any other
163 escrowed funds, received by a Missouri licensed real estate broker or salesperson, is in dispute between the parties, said Escrow Holder is
164 required by §339.105.4 RSMo to report and deliver the moneys to the State Treasurer within 365 days of the initial projected Closing Date.
165 Escrow Holder is hereby authorized to report and deliver any such moneys to the State Treasurer at any time following sixty (60) days after the
166 initial projected Closing Date (absent receipt of the written consent of all parties as set forth above). *Note: An Escrow Holder who is not a*
167 *licensed real estate broker or salesperson is not bound by certain Missouri statutes and regulations which apply to earnest money deposits, or*
168 *by the terms of this Contract regarding any Escrow Items, unless it separately agrees in writing.* In any reference in this Contract (including
169 any attached Rider) to the return of Earnest Money to Buyer, Buyer agrees that any expenses incurred by or on behalf of Buyer may be withheld
170 by Escrow Holder and paid to the applicable service provider(s).

171 **9.  LOSS; CONDEMNATION.** Risk of loss to improvements on the Property shall be borne by Seller until Closing. Seller agrees to maintain
172 Seller's current fire and extended coverage insurance *(if any)* on the Property until Closing. Seller shall do ordinary and necessary maintenance,
173 upkeep and repair to the Property through Closing. If, before Closing, all or any part of the Property is taken by eminent domain, or if a

Reference (e.g., Seller & Buyer) _____    **Aumann/Siverly** _____

174 condemnation proceeding has been filed or is threatened against the Property or any part thereof, or if all or any part of the Property is destroyed
175 or materially damaged, then Seller shall immediately provide written Notice to Buyer of any such event, together with copies of any written
176 communications to and from the condemning authority and/or insurer (as the case may be), the amount of proceeds payable, and whether Seller
177 intends to restore, prior to the scheduled Closing Date, the Property to its condition as of the Effective Date. If Seller restores the Property to its
178 prior condition before the scheduled Closing Date, then Buyer and Seller shall proceed with the Closing.

179 If the Property is not to be restored to its prior condition by Seller before the scheduled Closing Date, then Seller shall immediately provide
180 Buyer with a copy of any policy(ies) of insurance, the name and number of the agent for each policy and written authorization (if needed) for
181 Buyer to communicate with the insurer. Buyer may then either: (1) proceed with the transaction and be entitled to all insurance money (and/or
182 condemnation payments and awards), if any, payable to Seller, in which case the amount of any such payments theretofore made to Seller (plus
183 the amount equal to any deductible not covered by insurance) shall be a credit against the Purchase Price otherwise payable by Buyer at Closing,
184 and Seller shall assign to Buyer all remaining claims and rights to or arising out of any such casualty or taking, including the right to conduct any
185 litigation with respect thereto; or (2) rescind the Contract, and thereby release all parties from further liability hereunder, in which case the
186 Earnest Money shall be returned to Buyer. Buyer shall give written Notice of Buyer's election to Seller within 10 days after Buyer has received
187 written Notice of such damage or destruction and the aforesaid insurance information, and Closing will be extended accordingly, if required (i.e.,
188 if such information is not received by Buyer more than 10 days prior to the date scheduled for Closing). Seller shall not settle any claim
189 regarding a taking of any part of the Property by eminent domain or condemnation prior to the Closing (or earlier termination of this Contract)
190 without the prior written approval of Buyer, which approval shall not be unreasonably withheld, conditioned or delayed. Failure by Buyer to so
191 notify Seller shall constitute an election to rescind this Contract. A rescission hereunder does not constitute a default by Seller. If Buyer elects to
192 proceed to Closing and Seller has agreed to finance a part of the Purchase Price, then Buyer must use any insurance proceeds to restore the
193 improvements. The provisions of this Section shall survive Closing.

194 **10. ADJUSTMENTS AND CLOSING COSTS.** Adjustments, charges and Closing costs are agreed to be paid by the parties with sufficient
195 Funds to satisfy their respective obligations hereunder, as of the date of Closing (subject to current FHA and VA regulations and except as may
196 otherwise be expressly set forth herein or in a Rider hereto). Such matters and the following prorations shall be itemized on a closing statement
197 prepared by Closing Agent and executed by Buyer and Seller at or prior to Closing (the "Closing Statement"), together with all other documents
198 required of them pursuant to this Contract and/or customarily required by Closing Agent to complete the Closing. The parties hereby specifically
199 permit the involved Broker(s) to obtain and retain copies of both Buyer's and Seller's Closing Statements as required by 20 CSR 2250-8.150.

200 Buyer shall pay for (where applicable): (a) hazard insurance premium(s) from and after Closing; (b) flood insurance premium if required by
201 lender; (c) fees for the Survey or any appraisal ordered by or for Buyer; (d) title company charges (including Closing, recording and escrow fees)
202 customarily paid by a buyer in the County where the Property is located; (e) charges imposed by lender (e.g., appraisal and credit report fees,
203 loan discount "points", loan origination or funding fees and other loan expenses), unless specifically agreed to be paid by Seller; (f) building,
204 termite, environmental and any other inspections ordered by Buyer; (g) special taxes, special subdivision and any other owner association
205 assessments ("Special Assessments") levied after Closing; (h) the value of any propane gas left in any propane tank at the Property (based on
206 current market rate charged by supplier); (i) applicable municipal occupancy permit fee; and (k) any commission or other
207 compensation due from Buyer to the Broker(s).

208 Seller shall pay for (where applicable): (a) existing liens (recorded and unrecorded) and existing loans on the Property (if not assumed by
209 Buyer); (b) expenses of Buyer's loan agreed to by Seller in Section 3; (c) title company charges (including Closing, releasing and escrow fees)
210 customarily paid by a seller in the County where the Property is located; (d) required municipal, conservation district and fire district inspection
211 fees; (e) so-called "one-time" Special Assessments levied before Closing; (f) security deposits and prepaid rents and expenses held by Seller (to
212 be credited to Buyer at Closing); (g) agreed upon repairs; and (h) any commission or other compensation due from Seller to the Broker(s).

213 Buyer and Seller shall prorate and adjust between them on the basis of 30 days to the date of Closing (Seller to pay for
214 day of Closing): (a) current rents (Seller to receive rent for day of Closing), with rents delinquent over 30 days to be collected by Seller and not
215 adjusted; (b) general taxes (based on assessment and rate for current year, if both are available, otherwise based on previous year);
216 (c) installments of Special Assessments becoming due during the calendar year of Closing; (d) subdivision upkeep assessments and monthly
217 association fees (e) interest (if Buyer assumes an existing loan per Section 3 above); (f) flat rate utility charges (including water, sewer and trash);
218 and (g) boat dock fees.

219 **11. BINDING EFFECT/ASSIGNABILITY/SECTION 1031 EXCHANGE.** This Contract is binding on and shall inure to the benefit of the
220 parties and their respective heirs, successors and permitted assigns. Buyer may not assign this Contract without the written consent of Seller if:
221 (a) Seller is taking back a note and deed of trust as part of the Purchase Price, or (b) Buyer is assuming the existing note. Assignment does not
222 relieve the parties from their obligations under this Contract. The parties acknowledge that Buyer may desire to acquire, and/or Seller may desire
223 to sell, the Property as part of a like-kind exchange ("Exchange") pursuant to §1031 of the Internal Revenue Code (the "Code"). Each party
224 agrees to cooperate with the other and its qualified intermediary/ third-party facilitator in connection with any such Exchange, provided however,
225 in no event shall Closing hereunder be delayed or affected by reason of an Exchange, nor shall consummation of an Exchange be a condition
226 precedent or subsequent to any obligations of the parties under this Contract. No party shall be required to incur any cost or expense, or to
227 acquire or hold title to any real property, for purposes of consummating an Exchange at the request of another party (the "Requesting Party").
228 In addition, no party shall, by this Contract or acquiescence to an Exchange by a Requesting Party, have its rights or obligations hereunder
229 affected in any manner, or be deemed to have warranted to a Requesting Party that such Exchange in fact complies with the Code. A Requesting
230 Party shall reimburse each other party for any cost or expense incurred by such non-requesting party with respect to an Exchange.

231 **12. ENTIRE AGREEMENT/MODIFICATION.** This Contract and any Rider(s) or other attachments hereto (if any) constitute the entire
232 agreement between the parties hereto concerning the Property. There are no other understandings, written or oral, relating to the subject matter
233 hereof. This Contract may not be changed, modified or amended, in whole or in part, except in writing signed by all parties.

234 **13. DEFAULT/REMEDIES.** If either party defaults in the performance of any obligation under this Contract, the party claiming a default
235 shall notify the other party in writing of the nature of the default and the party's election of remedy. The notifying party may, but is not required
236 to, provide the defaulting party with a deadline for curing the default. Following a default by either Seller or Buyer, the other party shall have the
237 following remedies:

238 **A.  Seller Defaults.** If Seller defaults, Buyer may: (1) specifically enforce this Contract and recover damages suffered by Buyer as a result
239 of the delay in the acquisition of the Property; (2) terminate this Contract by written Notice to Seller, and agree to release Seller from liability
240 upon Seller's release of the Earnest Money and reimbursement to Buyer for all actual costs and expenses incurred by Buyer (and which are to be

Reference (e.g., Seller & Buyer) _____     **Aumann/Siverly**

241 specified in Buyer's Notice of default) as liquidated damages and as Buyer's sole remedy (the parties recognizing that it would be extremely
242 difficult, if not impossible, to ascertain the extent of actual damages caused by Seller's breach, and that return of the Earnest Money plus all
243 actual costs and expenses incurred by Buyer represents as fair an approximation of such actual damages as the parties can now determine); or
244 (3) pursue any other remedy and damages available at law or in equity. If Buyer elects to terminate this Contract, the Earnest Money, less any
245 expenses incurred by or on behalf of Buyer, shall be returned to Buyer. Buyer's release of Seller shall not relieve Seller's liability (if any) to the
246 Broker assisting Seller pursuant to any listing or other brokerage service agreement between them.

247　　**B.** **Buyer Defaults.** If Buyer defaults, Seller may: (1) specifically enforce this Contract and recover damages suffered by Seller as a result
248 of the delay in the sale of the Property; (2) terminate this Contract by written Notice to Buyer, and retain the Earnest Money as liquidated
249 damages and as Seller's sole remedy (the parties recognizing it would be extremely difficult, if not impossible, to ascertain the extent of actual
250 damages caused by Buyer's breach, and that the Earnest Money represents as fair an approximation of such actual damages as the parties can
251 now determine); or (3) pursue any other remedy and damages available at law or in equity. If Earnest Money is retained by Seller as liquidated
252 damages, any right or interest of the Broker assisting Seller with respect thereto shall be as set forth in the listing or other brokerage service
253 agreement entered into between them.

254 **14. PREVAILING PARTY.** In the event of any litigation between the parties pertaining to this Contract, the prevailing party shall be entitled
255 to recover, in addition to any damages or equitable relief, the costs and expenses of litigation, including court costs and reasonable attorney fees.
256 The provisions of this Section shall survive Closing, or any termination of this Contract.

257 **15. SELLER'S DISCLOSURE STATEMENT.** *(check one)*
258 ☐ A.  Buyer confirms that before signing this offer to purchase, Buyer has received a completed Seller's Disclosure Statement for this Property.
259 The Seller's Disclosure Statement is not a substitute for any inspection that Buyer may wish to obtain. Buyer is advised to address any concerns
260 Buyer may have about information in the Seller's Disclosure Statement by use of conditions to performance under this Contract.
261 ☐ B.  Seller agrees to provide Buyer with a Seller's Disclosure Statement within 1 day after the Effective Date. Buyer shall have 3 days after
262 delivery of the Disclosure Statement to review said disclosure, or to deliver written Notice of termination to Seller if this Contract is to be
263 terminated, in which case the Earnest Money shall be returned to Buyer. If Buyer does not timely deliver Notice of termination to Seller, then
264 Buyer shall be deemed to have accepted the Disclosure Statement without objection.
265 ☒ C.  No Seller's Disclosure Statement will be provided by Seller.

266 Seller confirms that the information in the Seller's Disclosure Statement *(if any)* is (or when delivered will be) accurate, to the best of
267 Seller's knowledge, as of the Effective Date of this Contract. Seller will fully and promptly disclose in writing to Buyer any new
268 information pertaining to the Property that is discovered by or made known to Seller at any time prior to Closing and constitutes an
269 adverse material fact or would make any existing information set forth in the Seller's Disclosure Statement false or materially
270 misleading.

271 **16. LEAD-BASED PAINT DISCLOSURE.** Buyer has reviewed and signed, if required by law, a Disclosure of Information of Lead-Based
272 Paint and/or Lead-Based Paint Hazards form.

273 **17. FINAL WALK-THROUGH.** Buyer, its representatives and any inspector whose report prompted a request for repairs, shall have the right
274 to enter and "walk-through" and verify the condition of the Property. Seller will arrange, at Seller's expense, to have all utilities turned on during
275 the Inspection Period and during this "walk-through" (unless utilities have been transferred to Buyer). If the Property is then vacant, Buyer shall
276 have the right to have the utilities transferred to Buyer within _____ days *(4 days if none stated)* prior to Closing. This "walk-through" is not for
277 the purpose of conducting any new inspection, but only for Buyer to confirm that: (1) the Property is in the same general condition as it was on
278 the Effective Date; and (2) repairs agreed upon *(if any)* are completed in a workmanlike manner. Waiver of any inspection does not waive the
279 right to a "walk-through". Closing does not relieve Seller of any obligation to complete any repairs agreed upon or required by this Contract.

280 **18. SIGNATURES.** This Contract may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall
281 constitute one and the same instrument. For purposes of executing this Contract, a document signed and transmitted by facsimile machine or a
282 scanned image, such as a pdf, via e-mail is to be treated as an original document.

283 **19. GOVERNING LAW/ CONSTRUCTION.** This Contract shall be construed in accordance with the laws of the State of Missouri,
284 including the requirement to act in good faith. The terms "Seller" and "Buyer" may be either singular or plural, masculine, feminine or neuter
285 gender, according to whichever is evidenced by the signatures below. Section captions in this Contract are intended solely for convenience of
286 reference and will not be deemed to modify, place any restriction upon, or explain any provisions of this Contract. If any one or more provisions
287 contained in this Contract shall for any reason be held to be invalid, illegal or unenforceable in any respect, then such invalidity, illegality or
288 unenforceability shall not be deemed to terminate this Contract or to affect any other provision hereof, but rather this Contract shall, to the fullest
289 extent permitted by law, remain in full force and effect and be construed as if such invalid, illegal or unenforceable provision(s) had never been
290 contained herein; provided, however, that such provision(s) may be referred to in order to determine the intent of the parties.

291 **20. NOTICES.** Any notice, consent, approval, request, waiver, objection or other communication (collectively, "Notice") required under this
292 Contract to be delivered to Seller shall be in writing and shall be deemed to have been delivered to Seller upon delivery thereof to the Broker (or
293 any of its affiliated licensees) assisting Seller, whether as a limited agent pursuant to a listing contract, a designated agent *(if any)* acting on
294 behalf of Seller, a dual agent or transaction broker. Likewise, any Notice to be delivered to Buyer shall be in writing and shall be deemed
295 delivered to Buyer upon delivery thereof to the Broker (or any of its affiliated licensees) assisting Buyer, whether as a limited agent pursuant to a
296 buyer's agency agreement, a designated agent *(if any)* acting on behalf of Buyer, a dual agent, transaction broker or as a Seller's subagent.
297 Refusal to accept service of a Notice shall constitute delivery of the Notice.

298 **21. RIDERS.** The following are attached and incorporated herein as part of this Contract: *(check all that apply)*
299 ☐ Financing Agreements MSC-2010　　☐ Contract Conditions MSC-2020　　☐ Dispute Resolution MSC-2030
300 ☐ Other _____　　☐ Other _____　　☐ Other _____

301 **22. SPECIAL AGREEMENTS.** SELLER TO PAY 6% OF SELLING PRICE AS COMMISSION TO GASLIGHT
302 PROPERTIES GMAC.   ACCEPTANCE OR REJECTION OF THIS OFFER BY THE FEDERAL COURT
303 WITH JURISDICTION IN THIS MATTER MUST BE IN WRITING

304 **23. PRINCIPAL(S) INVOLVED.** *(check one, neither or both, as applicable)*
305 ☐ Seller ☐ Buyer is a licensed real estate broker or salesperson and is a principal party in this transaction.

Reference (e.g., Seller & Buyer) _____ **Aumann/Siverly** _____

306 **24. SOURCE(S) OF BROKER(S) COMPENSATION OR COMMISSION.** *(check one, neither or both, as applicable)*
307 ☒ Seller ☐ Buyer
308 Seller and Buyer each represent and warrant to the other and to the Broker(s), that the Broker(s) identified in the Brokerage Relationship Section
309 below is (are) the only real estate broker(s) involved in this sale.

310 **25. BROKERAGE RELATIONSHIP.** By signing below, Buyer and Seller confirm their receipt of the Broker Disclosure Form prescribed by
311 the Missouri Real Estate Commission, and that disclosure of the undersigned licensee(s) brokerage relationship, as required by law or regulation,
312 was made to the Seller and/or Buyer or their respective agents and/or transaction brokers (as the case may be), by said undersigned licensee(s), no
313 later than the first showing of the Property, upon first contact, or immediately upon the occurrence of any change to their relationship.

314 Licensee assisting Buyer is a: *(Check appropriate box)*
315 ☐ Buyer's Limited Agent (acting on behalf of Buyer).
316 ☐ Seller's Limited Agent (acting on behalf of Seller).
317 ☐ Dual Agent (acting on behalf of both Buyer and Seller).
318 ☒ Designated Agent (designated to act on behalf of Buyer).
319 ☐ Transaction Broker Assisting Buyer (not acting on
320 behalf of either Buyer or Seller).
321 ☐ Subagent of Seller (acting on behalf of Seller)

322 Licensee assisting Seller is a: *(Check appropriate box)*
323 ☐ Buyer's Limited Agent (acting on behalf of Buyer).
324 ☐ Seller's Limited Agent (acting on behalf of Seller).
325 ☐ Dual Agent (acting on behalf of both Seller and Buyer).
326 ☒ Designated Agent (designated to act on behalf of Seller).
327 ☐ Transaction Broker Assisting Seller (not acting on behalf
328 of either Buyer or Buyer).

329 By signing below, the licensee(s) confirm making timely disclosure of its brokerage relationship to the appropriate parties.
330 **Gaslight Properties-GMAC**                          **Gaslight Properties-GMAC**
331 Broker's Firm Assisting Buyer (and MLS ID No., if required)   Broker's Firm Assisting Seller (and MLS ID No., if required)
332 By (Signature) _Julie Wilson PC_                     By (Signature) _CINDY WINK D_
333 Licensee's Printed Name: __Julie Wilson, PC__         Licensee's Printed Name: _CINDY E WEIGELTV_
334 Date: __May 07, 2008__                                Date: __5/7/08__

335 **26. FRANCHISE DISCLOSURE.** Although one or more of the Brokers may be a member of a franchise, the franchisor is not responsible for
336 the acts of said Broker(s).

337 **27. SALES INFORMATION.** Permission is hereby granted by Seller and Buyer for the Broker(s) to provide, effective as of and after the
338 Closing, sales information of this transaction, including Purchase Price and Property address, to any multi-listing service, local Association or
339 Board of REALTORS®, its members, member's prospects, appraisers and other professional users of real estate data.

340 **28. FOREIGN INVESTMENT.** Seller represents that it is not a foreign person as described in the Foreign Investment in Real Property Tax
341 Act (26 U.S.C. §1445) and agrees to deliver a certificate at Closing to that effect which contains Seller's tax identification number.

342 **29. ANTI-TERRORISM.** Each party hereto represents and warrants to each other party and to the Broker(s), that such party is not, and is not
343 acting, directly or indirectly, for or on behalf of any person or entity, named as a Specially Designated National and Blocked Person (as defined
344 in Presidential Executive Order 13224), or with whom you are prohibited to do business with under anti-terrorism laws.

345 **30. ACCEPTANCE DEADLINE.** Buyer's offer to purchase the Property from Seller shall automatically expire if Seller has not accepted this
346 Contract, by signing and delivering a fully-executed copy to Buyer, on or before the earlier of: (1) Buyer's delivery of written Notice to Seller
347 that this offer to purchase is withdrawn, or (2)_____ May ____ 14 , 2008 , at 10 A.m.

348 **31. TIME IS OF THE ESSENCE.** Time is of the essence in the performance of the obligations of the parties under this Contract.
349 All references to a specified time shall mean Central Time. With the exception of the term "banking days," as used herein, a "day" is defined as
350 a 24-hour calendar day, seven (7) days per week.

351 _____ _5-7-08_     SELLER *REJECTS* OFFER (Initial)_____
352 **BUYER**                    DATE

353                                          SELLER **COUNTER-OFFERS** (Initial)_____
354 **BUYER**                    DATE        Counter Offer form MSC-2040, which amends the terms of
355                                          this Contract, is attached and incorporated into this Contract.

356                                          By signing below Seller indicates that Seller has **ACCEPTED** this Contract
357                                          _____ @_5/7/08_
358                                          **SELLER**                DATE and TIME
359                                          _Pam Aumann_ @_5-7-08_
360                                          **SELLER**                DATE and TIME

361 ************************* **RECEIPT AND ACKNOWLEDGEMENT** *********************
362 Receipt of Earnest Money is acknowledged by the undersigned and will be delivered to Escrow Agent for deposit as set forth above.

363 By (Signature) _____            Date: _____
364 Licensee's Printed Name: _____

Approved by legal counsel for use exclusively by current members of the Missouri Association of Realtors, P.O. Box 1327, Columbia, Missouri 65205. No warranty is made or implied
as to the legal validity or adequacy of this Contract, or that it complies in every respect with the law or that its use is appropriate for all situations. Local law, customs and practice, and
differing circumstances in each transaction, may each dictate that amendments to this Contract be made. Last Revised 12/11/07.    ©2003 Missouri Association of Realtors
RES-2000                                                                                                      PAGE 6 OF 6

## EXHIBIT "A"

## PERSONAL PROPERTY
## TO CONVEY WITH THE SALE OF
## LOT 538 KAYS POINT NO. 7

**ENTRY:** Green throw rug
**KITCHEN:** *KITCHENAID* double-door refrigerator w/ ice &
water dispenser, down-draft range w/ smooth top, wall-oven,
microwave oven, dishwasher & trash compactor
**BREAKFAST AREA:** Love-seat
**DINING AREA:** Glass-top table w/ (6) upholstered, high-back
chairs
**LIVING AREA:** Tall silk tree in container; silk plant in brass
container
**MASTER BEDROOM:** *JVC* dual tape deck; *JVC* AM/FM
receiver; *JVC* 5-disc CD player; *RUSSOUND* speaker control unit
**LAUNDRY ROOM:** *KITCHENAID* washer & dryer
**STORAGE AREA:** Sauna; refrigerator
**LOWER LEVEL FAMILY ROOM:** *ULTRAVISION* digital big-
screen TV; entertainment center
**LOWER LEVEL KITCHEN:** *KITCHENAID* refrigerator,
smooth-top range, microwave oven & dishwasher; (2) barstools;
table w/ (4) chairs on rollers
**MISCELLANEOUS:** All window treatments
**BOAT DOCK:** w/ 16'x40' & 10'x24' slips, double PWC lift,
12'x28' swim platform & ladder, storage locker, irrigation pump,
30,000 lb. & 6,000 lb. boat hoists

**SELLERS:**                          **BUYERS:**

⊗ _____ @ 5/7/08            _____
                  DATE                              DATE
⊗ _____ @ 5-7-08            _____
                  DATE                              DATE