

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**MAY 13 2008**

# FILED

MAY 1 3 2008

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 844-1 |
| vs. | ) | Judge John W. Darrah |
| | ) | |
| GARY AUMANN | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant GARY AUMANN, and his attorney, TERRENCE LEFEVOUR, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The indictment in this case charges defendant with 6 counts of mail fraud, in violation of Title 18, United States Code, Section 1341.

3.      Defendant has read the charges against him contained in the indictment, and those charge have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment.  Count One charges defendant with mail fraud in violation

of Title 18, United States Code, Section 1341. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt and relevant conduct beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning in approximately 1997, and continuing until on or about December 18, 2007, in the Northern District of Illinois, Eastern Division, and elsewhere, GARY AUMANN, along with co-defendants Donald Down, Thomas Alessi, Robert Rogers, and Robin Rogers Vargo, devised and participated in a scheme to defraud American Airlines, and to obtain money and funds by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

More specifically, American Airlines, also known as AMR Corporation, conducted substantial operations at O'Hare International Airport in Chicago, Illinois. Defendant AUMANN was employed by American Airlines as the Planner of Facility Maintenance ("PFM"). As the PFM, AUMANN supervised and managed administrative functions in the Facilities Maintenance organization, such as (i) sourcing supplies, parts, and vendor services, (ii) repair of American's terminals, hanger areas, cargo facilities and ramp/parking areas, (iii) reviewing invoices and approving invoices for processing in accordance with corporate

2

guidelines, and (iv) maintaining oversight of vendor performance for activities related to maintenance.   In his capacity as the PFM, American Airlines delegated authority to AUMANN to approve purchase orders of less than $10,000.  Payments for goods or services over $10,000 could not be authorized by AUMANN in the absence of supervisory approval unless the bill for such products or services was supported by a vendor contract.

Beginning at various times in approximately 1997, defendant AUMANN directed co-defendants Down, Alessi, Rogers, and Vargas to submit to American Airlines invoices requesting payment for goods and services that had never been provided to American Airlines (the "bogus invoices") so that AUMANN, in his position as the PFM for American Airlines at O'Hare, could cause American Airlines to pay the bogus invoices. Co-defendants Down, Alessi, Rogers, and Vargas agreed to transmit bogus invoices to American Airlines well-knowing that AUMANN would cause American Airlines to pay the bogus invoices even though none of the good or services described therein had been supplied to American Airlines.   Defendant AUMANN generally instructed co-defendants Down, Alessi, and Rogers as to the description of the goods or services and amount to be billed on the bogus invoices submitted to American Airlines.

In order to submit the bogus invoices and receive payments from American Airlines, co-defendants Down, Alessi, Rogers, and Vargas opened accounts at various financial institutions where checks issued by American Airlines in satisfaction of the bogus invoices could be negotiated.  More specifically, co-defendant Down caused an account to be opened

at First American Bank in the name of Addison Business Supplies (ABS) and A & D Supplies (ADS). The address of record for ABS and ADS were post office boxes in Addison, Illinois, and Elk Grove Village, Illinois, respectively, both of which were rented by Down. Co-defendant Alessi caused an account to be opened at Access Federal Credit Union in the name of TR Industrials. The address of record for TR Industrials was a post office box in Chicago, Illinios, which was rented by co-defendant Alessi. Co-defendants Rogers and Vargas caused bank accounts to be opened at Harris Bank in the name of Feeder Industries and Crown Supply; and an account to be opened at LaSalle Bank in the name of Advanced Maintenance Products (AMP).

Co-defendants Down, Alessi, Rogers, and Vargas agreed to receive and negotiate checks issued by American Airlines in satisfaction of the bogus invoices, and agreed to share with defendant AUMANN the proceeds obtained through negotiation of AA checks. Defendant AUMANN knowingly approved payment for bogus ABS and ADS invoices transmitted by defendant Down to American Airlines; bogus TR Industrials invoices transmitted by defendant Alessi to American Airlines; and bogus Feeder Industries, AMP, and Crown Supply invoices transmitted by co-defendants Rogers and Vargas to American Airlines. By causing the bogus invoices to be submitted and approved for payment by American Airlines, at various times between approximately 1997 and December 2007, defendant AUMANN fraudulently caused American Airlines to transmit through the U.S. mail checks payable to ABS and ADS in amounts totaling approximately $3,654,569 for

4

payment of bogus invoices; checks payable to TR Industries in amounts totaling approximately $1,039,048 for payment of bogus invoices; and checks payable to Feeder Industries, Crown Supply, and AMP totaling approximately $1,218,337 for payment of bogus invoices. After causing the checks issued to ABS, ADS, TR Industrials, Feeder Industries, and AMP to be negotiated, approximately 60% of the proceeds was paid to AUMANN by his co-defendants.

Defendant AUMANN fraudulently caused the bogus invoices to be paid by American Airlines even though defendant AUMANN was aware that no goods or services had been provided to American Airlines. With regard to processing bogus invoices in amounts exceeding $10,000, defendant AUMANN falsely indicated in the books and records of American Airlines that such invoices were supported by a contract with the vendor, when in truth and fact, as defendant well-knew, such invoices were not supported by contract.

On or about August 20, 2007, at Chicago, in the Northern District of Illinois, defendant AUMANN, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be delivered by U.S. mail according to the directions thereon, an envelope from American Airlines, Tulsa, Oklahoma, addressed to Addison Business Supplies, P.O. Box 1332, Addison, Illinois, 60101, which envelope contained a check payable to Addison Business Supplies in the amount of $30,188.86.

5

## Maximum Statutory Penalties

7.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 20 years' imprisonment.  This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.  Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

6

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    The base offense level for the charge in Count One of the indictment is 7, pursuant to Guideline § 2B1.1(a)(1)

ii.    Because the amount of loss involved in the offense of conviction was more than $2,500,000 but not more than $7,000,000, an eighteen-level increase in the offense level is appropriate pursuant to Guideline § 2B1.1(b)(1)(J).

iii.    Because the defendant was an organizer and leader of criminal activity that involved five or more participants, a four-level increase in the offense level is appropriate pursuant to Guideline § 3B1.1(a).

iv.    Because the defendant abused a position of private trust in a manner that significantly facilitated the commission and concealment of the offense, a two-level increase in the offense level is appropriate pursuant to Guideline § 3B1.3.

v.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including

7

by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.    **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level under the government's calculation is 28, which, when combined with the anticipated criminal history category of I,  results in an anticipated advisory Sentencing Guidelines range of 78 to 97 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

8

e.      Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10.      Each party is free to recommend whatever sentence it deems appropriate.

9

11.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above.  Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12.     Regarding restitution, the parties acknowledge that  the total amount of restitution owed to American Airlines is approximately $5,911,954, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.  Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

13.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Forfeiture

14.     The indictment charges that defendant is liable to the United States for approximately $5,911,954, which funds are subject to forfeiture because those funds constitute proceeds of the violations alleged in Counts One through Six of the indictment. Further, defendant has subjected real and personal property to forfeiture, namely:

10

**Real Property**

a.  Real property located at 409 Hunt Club Drive, St. Charles, Illinois, legally described as:

LOT 23 IN THE HUNT CLUB UNIT 1, BEING A SUBDIVISION OF PART OF THE WEST ½ OF SECTION 26 AND THE EAST ½ OF SECTION 27, ALL IN TOWNSHIP 40 NORTH, RANGE 8, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 22, 1988 AS DOCUMENT 1949388, IN KANE COUNTY, ILLINOIS.

PIN: 09-26-154-008;

b.  Real property located at 465 W. Dominion Drive, Unit # 108, Wood Dale, Illinois, legally described as:

PARCEL ONE:

UNIT NO. 108 TOGETHER WITH AN UNDIVIDED .7303 PERCENT IN THE COMMON ELEMENTS APPURTENANT TO SAID UNIT IN DOMINION PLAZA ONE BUILDING NO. 1-A IN THE NORTHWEST 1/4 OF SECTION 21, TOWNSHIP 40 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN DUPAGE COUNTY, ILLINOIS, ACCORDING TO THE DECLARATION OF CONDOMINIUM OWNERSHIP AND EASEMENTS, RESTRICTIONS AND COVENANTS AND PLATS OF SURVEY ATTACHED THERETO AS EXHIBIT "D" RECORDED DECEMBER 30, 1974 AS DOCUMENT NUMBER R74-64293 AND A CERTIFICATE OF CORRECTION TO THE PLAT OF THE SURVEY RECORDED JANUARY 10, 1975 AS DOCUMENT NUMBER R75-1280 IN THE OFFICE OF THE RECORDER OF DEEDS OF DUPAGE COUNTY, ILLINOIS.

PARCEL TWO:

PERPETUAL AND EXCLUSIVE EASEMENT FOR PARKING PURPOSES IN AND TO PARKING SPACE NO. 17 AND 18 AS DEFINED AND SET FORTH IN SAID DECLARATION AND SURVEY.

PARCEL THREE:

PERPETUAL AND EXCLUSIVE EASEMENT FOR STORAGE PURPOSES IN AND TO STORAGE GYMCO NO. 104 AS DEFINED AND SET FORTH IN THE SECOND AMENDMENT TO DECLARATION OF CONDOMINIUM OWNERSHIP AND OF EASEMENTS, RESTRICTIONS AND COVENANTS FOR DOMINION FLARR THE CONDOMINIUM NO. 1-3 RECORDED MARCH 11, 1977 AS DOCUMENT NO. R77-16776.

PIN: 03-21-113-006;

c.    Real property located at 538 Kays Point Road, #7, Four Seasons, Missouri, legally described as:

ALL OF LOT NO. FIVE HUNDRED THIRTY-EIGHT (538) OF "KAY'S POINT NO. 7" A SUBDIVISION OF RECORD IN CAMDEN COUNTY MISSOURI, ACCORDING TO THE PLAT THEREOF ON FILE AND OF RECORD AT BOOK 14, PAGE 35, CAMDEN COUNTY RECORDER'S OFFICE.

PIN: 014-020-0000-0007062-000

**Cash and jewelry:**

d.    Funds totaling approximately $239 seized from Citibank account no. 910348152;

e.    Funds totaling approximately $2,349.30 seized from American Airlines Credit Union account no. 3213628222;

f.    Funds totaling approximately $7,909 seized from defendant AUMANN's residence on or about December 18, 2007;

g.    16 watches, 1 bracelet, and 1 necklace, seized on or about December 18, 2007, seized from defendant AUMANN's residence;

h.    4 earrings, 1 necklace, and 1 ring seized on December 18, 2007, from Individual LA in Lake Ozark, Missouri;

**Vehicles and other conveyances:**

12

i.    1999 model year 35' Cruiser Yacht "Dream On II," VIN# CRSUSW85D999, Registration # MO2484US;

j.    2003 Yamaha Waverunner, VIN# YAMA2436H203, Registration # MO7579FC;

k.    2003 Yamaha Waverunner, VIN# YAMA1243I203, Registration # MO7578FC;

l.    1986 model year, 22' Sea Ray, VIN # SERV1173D686, Registration # MO9614CB;

m.    2007 Lincoln Zephyr, VIN# 3LNHM28T27R630402, Illinois license no. X700416;

n.    2006 Lincoln Mark LT Pick-Up truck, VIN# 5LTPW18576FJ16172, Illinois license no. 66369H-B;

o.    2005 Ford Mustang S281, VIN# 1ZVFT82HX55195065, Illinois license no. 8351155;

p.    2004 Ford Expedition, Illinois license no. 4701850, VIN# 1FMFU18L94LA96004

q.    2004 Mercury Mountaineer, VIN #4M2DU86W34ZJ45867, Illinois license no. X687454;

r.    2004 FA78 Tilt Tandem vehicle trailer, Illinois license no. 1930 HZ TA, VIN# 4J6TC24284B061084;

s.    2002 Lincoln Navigator, VIN # 5LMFU28R32LJ01735, Illinois license no. 1767742;

t.    2002 Ford F350 Pick-Up Truck, VIN# 1FTWW33F12ED60913, Illinois license no. 52698M-B;

u.    2000 Ford Pick-Up Truck, VIN# 2FTZF0735YCB10987, Illinois license no. 27041G-B;

v.    1996 Jaguar convertible, IL license no. 3940838, VIN# SAJNX2745TC225265;

w.    1965 Chevrolet Pick-up, Illinois license no. 70 949 E, VIN# C1445N129428;

x.    1941 Willy's vehicle, VIN# W3544441, Illinois license no. 131517AV;

y.    1955 Chevy 2-door vehicle, Illinois license no. 135991AV, VIN# VC55J117442;

z.    1933 Ford 2-door coupe, Illinois license number 117 224 AV;

aa.    1961 Cushman Motorscooter, VIN# 765075605, Illinois license no. 53485av; and

bb.    1996 Harley Davidson Motorcycle, VIN# 1HD1CAP14TY221783, Illinois license no. MCY BG1462;

because the above-described property constitutes proceeds of the fraud scheme charged in the indictment. By entry of a guilty plea to Count One of the indictment, defendant acknowledges that the funds and property identified above are subject to forfeiture.

15.    Defendant agrees to the entry of a forfeiture judgment of $6,086,000, including the property identified above, in that the funds and property are subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and property and further agrees to the seizure of these funds and property so that these funds and this property may be disposed of according to law. Further, defendant agrees to execute any documents necessary to effectuate the transfer of his interest in any real or personal property subject to forfeiture.

16.    Defendant is aware that third parties may have claims to the property subject to forfeiture, but defendant acknowledges that his ownership interest in the property precedes those claims because his right, title or ownership interest arose at the time the mail fraud offenses were committed. Defendant will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third-party in the event a third party files a claim that is not supported by 18 U.S.C. § 981 as incorporated by 28 U.S.C. § 2461(c).

17.    Defendant understands that the government may satisfy this forfeiture judgment with substitute assets pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c). Any attempt on the part of defendant to transfer, convey or otherwise conceal

14

property prior to the satisfaction of this judgment shall be deemed to violate this plea agreement and subject him potentially to further criminal prosecution. If such conveyances are discovered prior to the imposition of sentence, the defendant understands that there will be no two-level reduction in the base offense level for acceptance of responsibility.

18.    Defendant further understands that while forfeiture of property is not typically treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose, it is agreed by the parties that any payments made in satisfaction of the forfeiture judgment shall be credited to any outstanding restitution obligation.

19.    After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

## Presentence Investigation Report/Post-Sentence Supervision

20.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

21.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of

his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

23.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 844-1.

24.    This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

25.    Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest or penalties from defendant.

### Waiver of Rights

26.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

17

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, and considering each count separately, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence and considering each count

18

separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

      c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically

preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Other Terms

27. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28. Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

## Conclusion

29. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

30. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the

Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

32.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

21

33.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 5/13/08

PATRICK J. FITZGERALD
United States Attorney

GARY AUMANN
Defendant

BRIAN HAYES
Assistant U.S. Attorney

TERRENCE LEFEVOUR
Attorney for Defendant

22